THOMAS COSTELLO, administrator &c., *vs.* THE SYRA-
CUSE, BINGHAMTON AND NEW YORK RAILROAD COM-
PANY.

In an action to recover damages for causing the death of the plaintiff's daugh-
ter, (a child seven years of age,) by the negligence of the employees of the
defendant, the plaintiff gave evidence tending to prove that a train of cars
coming from the depot could be seen for only about 200 feet from the place
of the accident, and that the train causing the injury was moving at the rate
of 25 miles an hour. The plaintiff offered to prove that there was a patent
brake in use on railroads, which was not used by the defendant, on its trains.
The judge said that "if the defendant should give evidence as to distances,
and speed of train, so as to make the use of the brake material, he would
allow the plaintiff to recall the witness." Subsequently, the defendant did
give evidence as to distance and speed of train, differing materially from that
given by the plaintiff. The plaintiff then offered to prove that with patent
brakes, which were in use on most of the railroads of the State, the train by
which the injury was done, running at the rate of eight miles an hour, might
have been stopped before it reached the place of the accident. The evidence
was, on objection thereto, rejected. *Held* that this ruling was erroneous.
That the fair and reasonable construction of the language of the court was,
that if the defendant should give evidence materially variant, as to distance
and speed, the plaintiff might go into evidence on those points; and not that
he might recall a single witness.

*Held, also,* that the plaintiff, had he been permitted to give proof as to the
brakes, when he first offered it, could not have been limited to a single wit-
ness; and when he yielded to the suggestion of the court, to omit examining
on that subject, for the present, could not have intended, nor been under-
stood as intending, to waive the right to go fully into the subject of the
brakes. And that the judge very properly reserved the right to admit
or reject the evidence, as he should find it to be, or not to be, material to
the issue.

*Held, further,* that the rejection of the evidence as to the use of the patent
brakes must be deemed to have been upon the ground that it was immaterial
to the issue; and that so considering it, the decision was erroneous. Judg-
ment reversed because of such rejection of evidence.

It is the duty of railroad companies to use, upon their trains, all improvements
in machinery, or in the construction of cars, &c., commonly used by other
companies; and it is negligence if they do not use them, for which they are
liable to a person injured, if the improvement would, in any appreciable de-
gree, have contributed to prevent the injury.

A charge to the jury that a child that is *sui juris* is bound to exercise the
same degree of caution, in approaching and crossing a railroad track, to pre-
vent injury from an approaching train, that an adult is bound to exercise, is
erroneous. And being so, the jury may, upon the evidence, find that a child,

Costello *v.* The Syracuse &c. Railroad Company.

seven years of age, injured while attempting to cross a railroad track, is not chargeable with negligence that contributed to produce the injury.

The decisions in *Honegsberger* v. *The Second Avenue Railroad Company,* (1 *Keyes,* 570,) and *Warner* v. *The N. Y. Central Railroad Co.,* (44 *N. Y,* 465,) commented on, and disapproved. `

It is not for an inferior court to disregard a decision of the court of last resort; but on the other hand, it is its duty to give such decision full effect, whatever its views may be, as to the correctness or wisdom of such decision. But when that court departs from its own decisions, and leaves it uncertain what its views are, upon a question of law, it is the duty of the court below to give effect to the latest expression of the views of the superior court; leaving it to determine which is the sounder—the earlier or the later conclusions. *Per* MULLIN, P. J.

It seems to be no more than reasonable to require railroad companies to run their trains through cities and villages at such moderate rate of speed as that, by the use of brakes, a train may be speedily stopped, so that neither person ° nor property shall be exposed to injury from it; and this without regard to whether there is a municipal regulation as to the speed at which trains shall be run. *Per* MULLIN, P. J.

Railroad companies are bound to supply their trains with brakes, and if a person is injured on, or crossing, a track, and the injury could have been avoided by the use of brakes, the omission to have them, or to use them, would be such negligence as would render them liable to the person injured.

.f they are obliged to have some brake, the public safety requires that it should be the best in use. They cannot use an old brake which will not stop a train in less than 1000 feet, when running ten miles per hour, when other companies use brakes that will stop a train in 500 feet, running at the same rate of speed.

A railroad company is as much bound to prevent doing injury to a person on its track, by using all the facilities that experience has provided for the purpose, as the person on the track is bound to use all the means in his power to escape the injury, when he is aware that it is impending.

.That the duty of a company to have and use all known improvements in its machinery is not confined to *passengers,* is shown by the case of *Smith* v. *The N. Y. & Harlem Railroad Company,* (19 *N. Y.* 127.)

A PPEAL from a judgment in favor of the defendant entered in Onondaga county, and from an order denying the plaintiff's motion for a new trial.

The plaintiff sues to recover of the defendant damages for the negligent killing of his daughter, Mary Costello, in the city of Syracuse, in August, 1871.

At the time of the killing, Mary was seven years of age, and had been sent by her mother upon an errand

to a butcher's shop a few rods from the plaintiff's house. An engine with three passenger cars, an express car and a baggage car, left in the morning of the day of the accident, the defendant's depot in Syracuse for New York, and was moving, as estimated by the witnesses on the part of the plaintiff, at a speed of from twenty to twenty-five miles per hour, and by the defendant's witnesses from seven to eight miles. The grade of the defendant's road ascends from the depot to Jamesville a distance of 6.69 miles, part of the way sixty feet to the mile. Very soon after the child left the house the whistle on the defendant's engine was sounded, which indicated to the brakesman of the train to put on the brakes, the effect of which would be to stop the train. At the time the whistle was blown the child was at the intersection of Taylor and Montgomery streets, which cross each other at right angles, approaching the track which crossed Montgomery and passed along the south margin of Taylor, on a pretty sharp curve. After the sound of the whistle the child started to cross the track, and as it did so it fell. The whistle again sounded and the child made an effort to rise. The whistle again sounded, giving, as one of the witnesses expresses it, an " unearthly yell," and instantly passing over her, cutting her body in two. The sounds of the whistle followed each other as rapidly as they could.

The plaintiff's theory of the cause of the fall of the child was the bad condition of the crosswalk on Taylor street lying between the rails, and which the defendant was bound to keep in repair. Several witnesses testified that the edge of one of the planks was raised above the other plank from one-half to three inches, and that the child struck her toe against this elevated edge of the plank and was thereby thrown down. Witnesses on the part of the defence testified that the walk was in good order, but concede that the planks were somewhat worn and decayed. An engineer was called, on the part

of the plaintiff, who testified that he had made measurements to ascertain how far a train of cars coming from the depot could be seen from the place of the accident, and he found it to be two hundred feet. The defendant's witnesses (one of whom was an engineer) testified that the smoke stack of the engine could be seen five hundred and thirty-one feet from a point on the crosswalk at the north end of the track, sixty-five feet south of the north line of Taylor street. Standing at a point in the crosswalk in the center of Taylor street, thirty-three feet south of its north line, he could see three hundred and eighty-four feet. At a place in the east sidewalk of Montgomery street, six feet from the fence on the north line of Taylor street, a grown person could see it three hundred and thirty-six feet off. A child standing eight and a half feet south of the north line of Taylor street, on the east side of Montgomery, would first see the smoke stack three hundred and eight feet down the track.

One of the defendant's witnesses testified that the bell on the engine was rung from the time of leaving the station until they were outside the city limits. Another witness testified that the noise made by the train could be heard half a mile.

On the trial the plaintiff offered to prove that there was a patent brake in use on railroads, which was not used by the defendant on its trains. The court told the plaintiff's counsel that if the defendant should give evidence as to distances and speed of train, so as to make the use of the brake material, he would allow the plaintiff to recall the witness. Subsequently the defendant did give evidence as to distance and speed of train above stated, differing materially from that given by the plaintiff, and the plaintiff's counsel thereupon offered to prove that with patent brakes, which were in use on most of the railroads of the State, the train, by which the injury was done, running at the rate of eight miles

an hour, might have been stopped before it reached the place of the accident, and that they were not in use on that train. The evidence was objected to by the defendant's counsel, and the objection was sustained, and the evidence was rejected.

The defendant's counsel moved for a nonsuit, principally on the ground that the deceased was chargeable with negligence that concurred to produce the injury.

The motion was denied; the court holding that the question of negligence was for the jury, and he would submit it to them. The judge charged the jury, among other things, that a child that was *sui juris*, was bound to exercise the same degree of caution in approaching and crossing a railroad track, to prevent injury from a passing train, that an adult was bound to exercise. And he also charged that a railroad company was bound to exercise a greater degree of care and caution to prevent injury to a child, than it was bound to exercise to a person of mature years.

The plaintiff's counsel did not except to any portion of the charge.

The jury found a verdict for the defendant, and the plaintiff appealed from the judgment and the order denying a new trial.

*George B. Gillespie*, for the appellant.

*Wm. J. Wallace*, for the respondent.

*By the Court*, MULLIN, P. J. In order to determine whether either or both of the parties were guilty of negligence, it was vitally important to ascertain how far from the place of the accident the deceased could see the approaching train, or the engineer could see the child, and also to ascertain the rate of speed at which the train was moving. The same facts must be ascer-

Costello *v.* The Syracuse &c. Railroad Company.

tained in order to determine whether the omission to use the patent brakes was negligence.

The plaintiff's counsel was assured by the court, at the time of offering evidence in relation to the use of the patent brakes on other railroads in the State, that if the defendant should give evidence as to the distances and rate of speed, so that it should be of the opinion that the use of the brakes was material in the case, it would permit him to recall the witness.

The evidence given on the part of the defence, after that understanding was had, was essentially variant from that given by the plaintiff, as to distance and speed, and yet when the plaintiff, at the close of the case, offered evidence as to the brakes, it was objected to by the defendant's counsel, and rejected.

This ruling was, I think, erroneous. The fair and reasonable construction of the language of the court was, that if the defendant should give evidence materially variant as to distance and speed, the plaintiff might go into evidence on those points, and not that he might recall a single witness.

The plaintiff, had he been permitted to give proof as to the brakes when he first offered it, could not have been limited to a single witness; and when he yielded to the suggestion of the court, to omit examining on that subject, for the present, could not have intended, nor been understood as intending, to waive the right to go fully into the subject of the brakes. The court very properly reserved the right to admit or reject the evidence as he should find it to be, or not to be, material to the issue.

The rejection of the evidence must be deemed to have been upon the ground that it was immaterial to the issue. The fact offered to be proved was that with the use of the patent brake, a train moving at the rate of eight miles per hour could have been stopped before it reached the place of the accident.

A person desiring to cross the track of a railroad when a train is in sight, will naturally arrive at a determination to cross, or not to cross, in reference to the distance he is from the train and the speed at which it is moving.

If a train is moving at the rate of twenty miles an hour, and is seen at the distance of 500 feet, the person crossing would have but fifteen seconds in which to cross. To attempt it, in that space of time, might be utter recklessness; but if the train was moving at the rate of eight miles per hour, he would have forty-five seconds in which to cross—a length of time amply sufficient, under most circumstances, to enable him to do it.

We must assume, for the purposes of this case, that the jury believed the evidence given by the defendant on the subject of distance and speed. Assuming that the distance that the engineer could see the child, or the child the engine, was 531 feet, as sworn to by one of the defendant's witnesses, the child would have had forty-eight seconds in which to cross and the brakesman stop the train. If the train could be stopped in that distance, and in that time, by the use of the patent brake—and we must assume that it could—the child's life might have been saved.

It is the duty of railroad companies to use, upon their trains, all improvements in machinery, or in construction of cars, &c., commonly used by other companies; and it is negligence if they do not use them, for which they are liable to a person injured, if the improvement would, in any appreciable degree, have contributed to prevent the injury.

The witness who testified to the distance the train could be seen, from the place of the accident, as being 531 feet, also says that from other points, designated by him, it could not be seen until it had approached the place of the accident very considerably nearer. We must assume that the plaintiff, if permitted to give the

Costello *v.* The Syracuse &c. Railroad Company.

proof, would have shown that if the patent brake had been used, the train could have been stopped within the shortest distance ; as in the offer no distance is specified.

In reply to these suggestions, it is said that by the proof the concurrent negligence of the deceased was so clearly and conclusively established that it was immaterial whether the defendant was or was not chargeable with negligence on its part.

As this subject is connected with questions arising on the charge to the jury, I will omit to consider it until I come to the charge.

The concurring negligence on the part of the deceased, must have been in attempting to cross the track after learning of the approach of the train.

The train had passed the place of the accident about the same hour daily for several weeks.

The child must have been aware of that fact, if she thought of the subject. We must assume that she heard the whistle before she reached the track. Indeed Mrs. Woolcott says that she left her house after hearing it, and when she got out of the house the child was in the road approaching the track. Then the second whistle sounded, and the child fell. If the child is to be held bound to the measure of care and caution, and forecast, that is required of an adult, negligence was established, and the verdict is right and cannot be disturbed. But if such a measure of care and caution is not required of it, concurring negligence may not have been established.

If that part of the charge in which the jury was instructed that there was no difference between children and adults, as to the degree of care and caution to be exercised in crossing a railroad track, is incorrect, the jury may, upon the evidence, find that the child was not chargeable with negligence that contributed to produce the injury.

The learned judge followed, in his charge, as to the

degree of care and caution, the law required of a child, *sui juris*, the case of *Honegsberger* v. *Second Av. R. R. Co.*, (1 *Keyes*, 570.) And if that case is to be taken as the law of the State, the charge was correct.

It is not for the inferior court to disregard the decisions of the court of last resort ; but, on the other hand, it is their duty to give them full effect, whatever their views may be as to the correctness or wisdom of such decisions. But when that court departs from its own decisions, and leaves it uncertain what its views are upon a question of law, it is the duty of the court to give effect to the latest expression of the views of the superior court, leaving it to determine which is the sounder, the earlier or the later conclusions. The first case to which our attention has been called as having been decided since the case reported in 1 *Keyes*, (*supra*,) in which the measure of care required of a child to protect itself against injury has been alluded to, is that of *Sheridan* v. *Brooklyn & Newtown R. R.*, (36 *N. Y.* 39.) The boy killed in that case was nine years of age, and while riding in one of the defendants' street cars was required to leave his seat in the car to make room for older passengers, and was then crowded out of the car on to the platform, and while there was pushed off the car by a passenger hurrying to get off, and was run over and killed. The defendants' counsel asked the court to charge the jury that the fact that the deceased was a child makes no difference in the application of the rule of law as to the question of negligence. The court, referring to the above request, say : "The question of negligence as here put forth arises upon the conduct of the deceased in taking care of himself, and also upon the conduct of the defendant in regard to the deceased. In the latter view, the rule asked for would not have been correct. A sick or aged person, a delicate woman, a lame man, or a child, is entitled to more attention and care from a railroad company than one in good health and under no

disability. They are entitled to more time in which to get on or off the cars; they are entitled to more consideration when crossing a street, to the end that the cars shall not run over them. All these classes are entitled to use the streets and to ride on the cars, and such haste in starting up, or such speed in driving as would be reasonable care toward others might well be carelessness and neglect toward them."

This language is hardly in harmony with that of the court in 1 *Keyes,* but cannot be said to overrule the doctrine of that case; but it is the first indication of a desire to be rid of the harsh and severe doctrine of that case. In *O'Mara* v. *The Hudson River R. R. Co.*, (38 *N. Y.* 445,) a lad of eleven and a half years of age was killed while attempting to cross the defendants' road. Near Albany a train was moving northerly on one track, and while he was waiting for it to pass, an engine moving south came down on another track, without giving any signal of its approach, and it ran over and killed the boy. The defendants' counsel moved for a nonsuit, on the ground, among others, that the deceased was guilty of negligence that concurred to produce the injury. Hunt, J., on delivering the opinion of the court in reference to the ground of nonsuit above stated, says : "In the present case, it is to be considered, also, that the deceased was a lad eleven and a half years old, to whom greater indulgence should be extended than to an adult. He was of that age that he was quite fit to be trusted with the care of his own person in the streets of a country village, and yet it is not probable that he would exercise as much prudence and caution as would an adult. If an aged or infirm person had been found upon the crossing of this street, when the 'Jones' (engine) was started westerly, in such a position that he could have been seen by the engineer or fireman, it would have been the engineer's duty to have stayed the engine so that the disabled person could make his escape. * * * The

old, lame and infirm, are entitled to the use of the streets, and more care must be exercised toward them by engineers than toward those who have better powers of motion. The young are entitled to the same rights, and cannot be required to exercise as great foresight and vigilance as those of mature years; more care is required toward them than toward others. * * * In a case like the present, the jury were not bound to require the same demureness and caution as in the case of an older person." (*Ihl* v. *Forty-second St. &c. R. R. Co.*, 47 *N. Y.* 317.) If a jury is not bound, in passing on the question of the negligence of a child, *sui juris*, that has sustained an injury through the negligence of another, to require the same caution as is required in the case of an older person, it must be because the law does not require of such persons the same degree of caution that is required to be exercised by those who are older. If such is the law, it is wholly at variance with the case of *Honegsberger*, (*supra*.) That case requires of the child the same measure of care that is required of an adult, and if such degree of care is not exercised, the omission of it is negligence that will, if it contributes to the injury, defeat a recovery.

If the case of *Honegsberger* is to be followed as the law of the State, I do not see how children can be permitted to be in a street in which a railroad is laid, unless some person or persons are assigned to attend them. They cannot use the same forethought and care that persons of mature life are capable of using, and if they do not, they may be killed with impunity, provided the failure to use such measure of care has contributed to their injury.

The condition of children is rendered vastly more alarming by the case of *Warner* v. *The N. Y. Cent. R. R. Co.*, 44 *N. Y.* 465.) It was held in that case, that it was error to instruct a jury that citizens and railroad corporations have the same and equal rights, as to the use of

Costello *v.* The Syracuse &c. Railroad Company.

a highway at a crossing. The company has the prefer-ence, and it is the duty of the citizen to wait until its train has passed.

It was also held in that case that it was error to charge the jury that a high rate of speed at a crossing is a fault which renders the railroad company liable for an injury occurring at such crossing. The law, the learned commissioner says, places no restriction upon the rate of speed at crossings, nor does it subject the company to damages accruing from the speed of trains, if the sig-nals required by law be given. Negligence cannot be inferred from speed alone. It was once supposed that the citizen had as good a right to be in the highway as a railroad train, and that a proper regard for life and limb made it necessary that the company should run their trains so as to prevent injury to the citizen. But now trains may be moved through the most populous cities and across and along the most frequented thorough-fare at lightning speed, without any regard whatever to the lives of travellers of whatever age or in whatever state of health they may be.

It would seem to me to be no more than reasonable to require railroad companies to run their trains through cities and villages at such moderate rate of speed as that by the use of brakes the train may be speedily stopped, so that neither person nor property should be exposed to injury from it; and this without regard to whether there was a municipal regulation as to the speed at which trains should be run. This imposes no great burden on the company, and it would relieve the people from the reckless disregard of life so frequently shown by persons employed in running trains.

The right of children, old enough to be trusted to run in the streets without a guardian, to be in the streets and to cross railroad tracks must be secured, so that they may be safe in going to and from school, in running errands for their parents, or in going to and

returning from their place of business, or they will be driven from the street, or butchered in it. They cannot exercise the care and caution of persons of mature life, and if the law shall require it, there will be heard in every town and hamlet a cry like that which was heard in Egypt, when in every house there was one dead. Allow trains to run at whatever rate of speed the engineer or conductor deems proper, regardless of the lame and blind and sick, and of the helplessness of age or of childhood, and the life of no class of persons is safe. With all deference, the law ought not to allow of it.

If the child in this case had not fallen on the track, it would not have been injured. The jury might find that she had time enough to cross after hearing the first whistle; and if they should so find, she would be free from negligence and the plaintiff entitled to recover. But it was impossible for the jury, under the instruction of the court, to make any allowance in favor of the child for its inexperience and alarm; and the question of her concurring negligence can never be properly considered while the law is as it was put forth by the judge.

The learned judge told the jury that it was the duty of a railroad company to exercise a greater degree of care toward children and the lame and sick than toward those of age and of physical ability to take care of themselves; and this the respondent's counsel insists meets all the requirements of the law.

If this duty does rest on the railroad company, it is because the safety of such persons renders it necessary. Now if a child is in law deemed as capable of taking care of itself as a mature person, what is the necessity of requiring the company to exercise any more care toward it than toward an adult?

If the company uses no care to prevent collision with a child, it is guilty of negligence. But of what benefit is that, so long as it is relieved from responsibility because the child is shown not to have used the caution

that an adult would have used under the same circumstances ?

The instruction to the jury, now under consideration, was erroneous. But it is said that the plaintiff is not entitled to any benefit, because his counsel omitted to except to it.

The case of *Bennett* v. *Johnson*, (2 *Lans.* 94,) holds that the court may set aside a verdict for the misdirection of the court below, on the facts or the law, notwithstanding no exception was taken thereto. I have not examined to see whether this is a correct statement of the practice, as it controls us, whether it is right or wrong. It follows, therefore, that the plaintiff is entitled to the benefit of the error of the court.

The reversal of the judgment might be placed on the error in the charge. I prefer to put it on the rejection of the evidence as to the patent brakes.

Before leaving the case, it is proper to notice a suggestion of counsel that it is not incumbent on a railroad company to use the latest improvements in machinery, &c., in order to prevent injury to persons on or crossing their track—that such duty can only be insisted on by passengers.

Railroad companies are undoubtedly bound to supply their trains with brakes, and if a person is injured on or crossing the track, and the injury could have been avoided by the use of brakes, the omission to have them, or to use them, would be such negligence as would render them liable to the person injured.

If they are obliged to have some brake, the public safety requires that it should be the best in use. They cannot use an old brake which will not stop a train in less than 1,000 feet, when running ten miles per hour, when other companies use brakes that will stop a train in 500 feet, moving at the same rate of speed.

A company is as much bound to prevent doing injury to a person on its track, by using all the facilities that

Costello *v.* The Syracuse &c. Railroad Company.

experience has provided for the purpose, as the person on the track is bound to use all the means in his power to escape the injury, when he is aware that it is impending.

That the duty of the company to have and use all known improvements in their machinery is not confined to passengers, is shown by the case of *Smith* v. *The N. Y. & Harlem R. R. Co.*, (19 *N. Y.* 127.) The person killed in that case was an engineer in the employ of the New York & New Haven Railroad Company, that ran its cars over a part of the track of the New York & Harlem company, under a contract between them, that the latter should keep the road in repair and furnish switchmen, &c., and that the former should pay for the use of the same. The latter company was held liable, because the most approved form of switch was not used, whereby the death of the engineer was caused.

In granting a new trial in this case, we do not intend to be understood as expressing any opinion as to whether either of the parties has been guilty of negligence. All we intend to do is to admit such evidence as we deem to be competent, and to secure the submission of the case to the jury with such instructions as will enable them to understand the legal rights and liabilities of the parties.

The judgment is reversed, and new trial ordered, costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]