Ross, C. J.
The appellee, Herman Michaels, as the guardian of Iva Weaver, a minor, brought this action against the appellant, to recover damages for personal injuries received byherwhilein appellant’s employ. Upon a *673 trial by jury, a verdict was returned in favor of appellee in the sum of twenty-nine hundred dollars, judgment was rendered by the court, but afterwards reduced by a remittitur filed by appellee, to eighteen hundred dollars.
The material allegations of the complaint are, that on the 28th day of August, 1892, plaintiff’s ward, Iva Weaver, was employed by the defendant to work in a laundry owned and operated by him in Fort Wayne, Indiana; that at the time of her employment she was between fifteen and sixteen years of age, and prior to said employment had never worked “at any trade or business other than assisting her mother in her household duties, and that she was wholly untaught and inexperienced in all other trades and occupations, and had no knowledge of laundry work as conducted at defendant’s shop;” that she was employed to iron flannels with a flat-iron, “and for no other service;” that on the 30th day of September, 1892, the defendant’s foreman set her to work at a machine operated by steam and called a “mangle;” that this machine, which was used for ironing sheets, pillow cases, linens and other muslins, “consisted of a round iron bar which operated rapidly in revolving in close proximity to a parallel, but immovable, bar of iron,” both of which bars “being heated to such a degree of heat as is required in flat irons when required for ironing purposes, and to such a degree as to burn and destroy flesh that came in contact therewith; that she did not know how to operate the machine, and was afraid to undertake it; that defendant’s foreman informed her that there was no danger in operating it, and that it required no previous experience to do so, whereupon she commenced work upon the machine and continued to so work for the period of one week, at which time she informed defendant (who, from a time previous to her be *674 ing so set to work until that time, was absent) that she had been taken from her former occupation and set to work on the “mangle;” “that she had no experience in the operation of said machine; that she believed it to be dangerous, and that she desired to quit work thereupon;” that he then told her it was not difficult to manage or dangerous to the operator, “and that he would take all the risk of any accident that might occur to her by reason of her operating said mangle;” that afterwards, on the-day of October, 1892, while she “was carefully and prudently operating said machine” her thumb and fingers were drawn into and between the heated iron bars, and her fingers, hand, and arm “horribly mashed, torn and burned, wholly forever destroying all use of said hand, and crippling said hand for life. It is also averred that she in no way contributed to her said injuries.
The theory of this complaint is not like the ordinary action charging negligence on the part of the defendant and want of contributory negligence on the part of the plaintiff, but it seeks a recovery upon the guaranty of the defendant, wherein, as charged in the complaint, the defendant agreed, in consideration of her continuing to use the mangle, “that he would take all the risk of any accident that might occur to her,” which might be the result of her operating the machine. This is the theory of the complaint, and upon this theory alone can the action be maintained.
The errors assigned in this court are as follows:
1st. The court erred in overruling appellant’s motion for judgment in his favor upon the special findings of the jury, notwithstanding the general verdict.
2d. The court erred in overruling appellant’s motion for a new trial.
*675 3d. The court erred in sustaining appellee’s motion for judgment on the verdict.
The first and third will be considered together, for if the first is not well taken, the third is also untenable. The verdict is a general one, regular in form, and sufficient on its face to support a judgment.
With their general verdict, the jury answered, and returned a number of interrogatories submitted to them at the request of both parties. These interrogatories, seventy-seven in number call for facts permissible under the issues, but so far as we have been able to ascertain, or so far as our attention has been called thereto, no material fact necessary to the maintenance of appellant’s action has been found adverse to the verdict. Several of the answers are apparently irreconcilable, one with the other, but under the issues, as we view the theory of the complaint, it is immaterial whether they can be reconciled or not. As to whether or not the defendant assumed the responsibility of appellee’s ward operating the machine, and guaranteed her against the injui’y, the jury in answer to interrogatory number eleven, of those submitted at the request of the plaintiff, found that he did. The general verdict in favor of the plaintiff is a finding that the defendant was injured in the manner alleged, and that the defendant guaranteed her against injury. There is no such conflict therefore between the general verdict and the answers to the interrogatories, that they can not be reconciled one with the other. Answers to interrogatories overcome the general verdict only when both can not stand. In other words, while every presumption is indulged in favor of the correctness of the general verdict, and that the jury have found proven by a preponderance of the evidence every material fact necessary to sustain it, yet, if the jury in answer to an interrogatory find a material fact contrary *676 to what they must have found in order to have reached the general verdict, the general verdict is wrong, and can not stand, hence the answer to the interrogatory overcomes the general verdict, for the reason that it shows that the jury’s verdict is not based upon all of the facts necessary to its validity. Evansville, etc., R. R. Co. v. Weikle, 6 Ind. App. 340, and cases cited.
This leads us to the consideration of the only other error assigned, namely, the court’s ruling on the motion for a new trial.
The reasons for which a new trial was asked were thirteen in number, many of which, however, have not been discussed by counsel, hence will not be considered by this court. Questions presented by the record, but which are not discussed by counsel, are deemed to be waived.
Counsel have cited and quoted from many authorities not only of this court, and the Supreme Court of this State, but of the courts of last resort of other States, holding that one who undertakes to use machinery in the operation of which more or less danger attaches, which dangers are open and obvious, assumes the risk thereof. This is a proposition of law so well settled that it seems hardly necessary to cite any authority in support of it.
In the case under consideration, however, the natural risks were not assumed by the appellee because she undertook to do the work upon the guaranty of the appellant that for the risks naturally incident to the operation of the machine he would answer for her safety. The question, however, arises to what extent the guaranty of appellant applies, and whether, if the injury was the result of appellee’s own negligence alone, appellant is liable. What did appellant undertake to protect appellee from; only the usual risk incident to the operation *677 of the machine, or did he also undertake to guarantee her as against her own negligence? We think it clear that the appellant did not undertake to compensate Iva Weaver for injuries received through her own negligence, but only such as might befall her by reason of appellant’s negligence or by reason of the natural dangers incident to the use of the machinery when operated by her in an ordinarily p'rudent manner. If the evidence in this case is sufficient to show that the “mangle” which was operated by appellee’s ward' was dangerous, and that she was injured because it was so, and that she was inexperienced, and incapable of appreciating the danger, then the verdict is right. But if, on the other hand, the evidence is such as shows that the machine was not dangerous to operate, and that the injury sustained by appellee’s ward was the result of her own negligence, the verdict is wrong, and must be set aside.
The law recognizes that an infant is not held to that strict accountability that is exacted from an adult. But if the child is not so young as to escape all legal accountability, yet is sufficiently matured to be able to reason for itself and to know and appreciate danger, it is to be held responsible for the exercise of such care as it is expected that a child of ordinary intelligence of that age is capable of exercising under like circumstances. This rule rests upon sound reason, and has the support of both text writers and the courts. Beach Contrib. Neg. (2d ed.), section 136; Shear. & Redf. Neg., section 73; 2 Thompson Neg., p. 1180, section 31; Wright v. Detroit, etc., R. W. Co.,77 Mich. 123; Railroad Co. v. Stout, 17 Wall. 657; Baltimore, etc., R. W. Co. v. McDonnell, 43 Md. 534; Robinson v. Cone, 22 Vt. 213; Birge v. Gardner, 19 Ct. 507; Costello v. Syracuse, etc., R. R. Co., 65 Barb. 92; Lynch v. Smith, 104 Mass. 52; Pittsburgh, etc., R. W. Co. v. Caldwell, 74 Pa. St. 421.
*678 A child but three or four years of age knows, whether from instinct or mental reasoning, that fire will burn, and to touch it must result in injury. The older the child the more acute the senses become to the perception of danger, and the more capable it becomes of exercising the faculties for its own preservation. To say that a child ten years of age, except it be idiotic, does not know that to put its hand in fire must result in the hand being burned, would be to place a very low estimate upon the intelligence of children, and cast serious reflections upon the law itself.
As said by the Supreme Court of Massachusetts, in the case of Ciriack v. Merchants’ Woolen Co., 146 Mass. 182: “In hiring a boy twelve years of age, and apparently of the average intelligence, an employer is not called upon to tell him that if he holds his hand in the fire it will be burned, or strikes it with a sharp instrument it will be cut, or thrusts it between the teeth of a revolving cog-wheel in the gearing of a mill it will be crushed.”
At the age of fifteen years, any child of ordinary intelligence must know that to place its hand upon a bar of iron heated to a great heat must burn, or to place its fingers between two heavy rollers, where the space is too small to admit them, must result in their being crushed. It does not require the consideration and judgment of twelve men to establish this fact. Every sensible human being knows it, hence it is declared by the law to be true, because inevitable. That which is inevitable is always true.
So, in this case, the appellee’s ward was bound to, and did, know that if her hand came in contact with the heated rollers it would be burned, or if her fingers were drawn between the rollers they would be crushed. We observe, however, in this case, that the jury trying the *679 cause, in answer to interrogatories submitted to them, find that appellee’s ward, although nearly sixteen years of age, and of ordinary intelligence for one of that age, did not know that if she got her fingers between the rollers she would get them injured. At the same time, in answer to another interrogatory, they find that the only danger attending the use of the “mangle” was the possibility of the operator getting her hand between the rollers.
The appellant, by this guaranty, did not undertake that appellee’s ward should not get her hand against the heated irons, or run her fingers between the rollers, because he had a right to assume that she would not voluntarily do so, but he agreed that if she used ordinary care, such as was to be expected of one of her age, intelligence and experience, nevertheless was injured, he would answer therefor. This is the extent of' his undertaking, and while it imposes a greater responsibility upon him than that usually imposed by the law upon a master, it does not go so far as to relieve the servant from the exercise of ordinary care for her own protection.
The evidence discloses that the appellee’s ward was operating the machine in the usual and ordinary manner; that she was running a pillow case through the machine, and in order to make it go through properly, she put her thumb inside the pillow case to straighten it out, and her thumb caught and her hand was drawn between the rollers. - Had she voluntarily put her fingers between the rollers, or negligently suffered them to be drawn there, the question presented would be entirely different, but the evidence tends to show that she was exercising ordinary care in the handling of the pillow case and in running it through the machine, and that the injury was the result of getting her thumb caught, causing her hand to be drawn into the machine. Although the appellant *680 did not agree to protect her against an injury which was the result of her own negligence, he did agree to indemnify her against any accidental injury.
Filed Jan. 30, 1895.
There is evidence tending to support the verdict, hence-we can not say that the court below erred in overruling the motion for a new trial on that ground.
No error has been pointed out warranting a reversal of the judgment.
Judgment affirmed.