# CHARLESTON.

KLINKLER v. WHEELING STEEL & IRON CO.

Submitted February 6, 1897—Decided March 31, 1897.

43   219
45   263

43   219
48    19
48   610
48   612

43 219
51 545

43      219
64      314

1. APPEAL—*Record—Bill of Exceptions.*
   When a bill of exceptions is taken after all the evidence has been submitted, and it purports to set out all the evidence, the evidence set out in this bill of exceptions may be looked to in considering the questions raised in another bill of exceptions taken in the progress of the trial. *Hall* v. *Hall*, 12 W. Va. 2. (p. 221.)

2. NEGLIGENCE—*Question for Court.*
   When a given state of facts is such that reasonable men may differ upon the question whether there was negligence or not, the determination of the matter is for the jury. But when the facts are such that all reasonable men must draw from them the same conclusion,—when there is no room for two reasonable opinions about it,—then it becomes a question of law for the court. *Raines* v. *Railway Co.*, 39 W. Va. 50, syllabus 2 and 3. (p. 225.)

3. EVIDENCE—*Excluding Evidence From Jury.*
   When the evidence is so clearly deficient as to give no support to a verdict for plaintiff, if so rendered, the court should exclude the evidence from the jury. (p 226..)

Error to Circuit Court, Ohio county.

Action by Albert Klinkler against the Wheeling Steel & Iron Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

DOVENER & CONIFF, for plaintiff in error.

W. P. HUBBARD, for defendant in error.

McWHORTER, JUDGE :

Albert Klinkler instituted his action of trespass on the case in the Circuit Court of Ohio county September 19, 1893, against the Wheeling Steel & Iron Company, alleging injuries to the person of the plaintiff as the result of carelessness and negligence on the part of defendant company. Demurrer to the declaration was sustained, and the case remanded to rules with leave to plaintiff to amend, and an amended declaration was filed, to which, also, defendant demurred, which demurrer was over-ruled, and on the 19th day of December, 1894, defendant pleaded not guilty, and issue was thereon joined, and a jury impaneled, and before the plaintiff's evidence was all in he asked leave to further amend his declaration, which leave was granted, and plaintiff filed his declaration as amended ; and, all the evidence adduced by the plaintiff having been fully heard, and the plaintiff having rested his case, the defendant, without offering any evidence, moved the court to exclude the evidence from the consideration of the jury, to the granting of which motion the plaintiff objected, and on argument and consideration the court sustained the motion, and plaintiff excepted. Thereupon the jury returned a verdict for the defendant, and plaintiff moved the court to set aside said verdict and grant him a new trial, which motion was set for hearing on December 29, 1894, on which last mentioned day said motion was argued and over-ruled by the court, to which plaintiff excepted, and the court proceeded to render judgment upon said verdict.

The plaintiff took four bills of exception, which were duly signed by the judge, and made part of the record. The first was to the ruling of the court in excluding the evidence from the jury and relieving the jury from the consideration thereof. This bill of exceptions No. 1 failed to certify the evidence so excluded. The second bill of exceptions was taken to the over-ruling by the court of the motion of the plaintiff, made after the rendering of the verdict, to set aside the verdict and grant him a new trial of the cause, and the plaintiff also asked the court to certify in this bill of exceptions No. 2 all the evidence introduced in said cause, which was done. The bill of exceptions No. 3 was to the ruling of the court in sustaining the defendant's objection to two certain questions asked by

plaintiff of witness J. M. Vance. And bill of exceptions
No. 4 was taken to the ruling of the court sustaining a like
objection to a question by plaintiff asked of witness R. T.
Devries.

It is contended by defendant that, the bill of exceptions
No. 1, taken to the action of the court in excluding the
evidence of the plaintiff from the jury, not setting forth,
either directly or by reference to any other part of the
record, the evidence which is said to have been excluded,
this Court, of course, can not see from this bill of excep-
tions that the court below erred, and it must be assumed
that its judgment was right; and it is further contended
that the Court cannot refer to the second or any other bill
of exceptions for the purpose of seeing what evidence is
referred to, such other bill not being referred to in bill
No. 1,—and cites the case of *Zumbro* v. *Stump*, 38 W. Va.
334 (18 S. E. 443), in support of the position, which says
(quoting from 1 Bart. Law Prac. p. 659):  "The facts
stated in first bill of exceptions, however, cannot be noticed
by an appellate court in considering another, unless the
first bill is referred to in the second, and adopted as part
of it,"—and cites *Crawford* v. *Jarrett's Adm'r*, 2 Leigh
639; *Perkins' Adm'r* v. *Hawkins' Adm'r*, 9 Grat. 649;
*Brooke* v. *Young*, 3 Rand. 106. It will be found in some
of the cases here cited, notably that of 9 Grat., and also in
*Hall* v. *Hall*, 12 W. Va. 21, and set out in syllabus 2 of
that case, an exception is made to the rule, as when a bill
of exceptions is taken after all the evidence has been sub-
mitted to the jury, and it purports to set out all the evi-
dence, the evidence set out in this bill of exceptions may
be looked to in considering the question raised in another
bill of exceptions taken in the progress of the trial. So
that we see no difficulty in the way of considering the evi-
dence certified in bill of exceptions No. 2 to ascertain
whether the court erred in excluding the evidence from
the jury.

Plaintiff was conductor on the transfer train to make
connection between Wheeling and Benwood on passenger
trains to and from Wheeling. On the 8th of April, 1893,
plaintiff says in his testimony, they took charge of the
train from Wheeling, and took the connection to Benwood,
and then made connection there with the regular train No.

47 from Grafton, and brought her up to the Baltimore & Ohio shop at Twenty-seventh street, Wheeling, where the shops were then located, and then took the train from the regular engine from Grafton, and put on engine 62 to get passenger train to the depot. The train was pushed up in front of the engine on the main and eastern track, plaintiff standing on front platform furthest from the engine, the proper place for conductor when train was being pushed. With plaintiff, on front end of car, were four other men. About Twenty-sixth street are situated the works of the defendant, on the east side of the Baltimore & Ohio tracks, from which works the defendant's railroad runs across the several tracks of the Baltimore & Ohio to the track of the Pittsburg, Wheeling & Kentucky Railroad, operated by the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company. At the time of the accident the next track of the Baltimore & Ohio on west of main track was filled with freight cars of the Baltimore & Ohio Company, which obstructed the view between the main track and the cross track from the point at which the train was being pushed. The engine of defendant, called a "dinkey," was coming from the Pittsburg, Wheeling & Kentucky track towards the iron works with two freight cars. On the engine were J. C. Malony, engineer and fireman, and —— Householder, brakeman. Before reaching the second track, on which the freight cars were standing, defendant's engine stopped, and Householder went forward past the freight cars, and says he looked down and saw a train of coaches, and, supposing they were switching out of the shop and stopped, he (Householder) waved the defendant's engineer ahead, but he was a little slow in starting, and he (Householder) started back,—stepped on the footboard on front of the engine as she came up. Plaintiff says he was about forty feet away when he saw Householder wave him out. Plaintiff's train was moving "about 20 miles an hour." He afterwards, however, corrects this, and says he was going at the rates of eight or ten miles an hour. Another witness, James Young, puts it at six miles per hour that plaintiff's train was moving at time of accident. Plaintiff says he did not know what Householder was waving for.

It is provided in section 61, chapter 54, Code, that "when

the tracks of two railroads cross each other, or in any way connect at a common grade, the crossing shall be made and kept in repair and watchman maintained thereat at the joint expense of the companies owning the tracks, and all trains or engines passing over such tracks shall come to a full stop not nearer than two hundred feet nor farther than eight hundred feet from the crossing, and shall not cross until signaled so to do by the watchman, nor until the way is clear." In answer to the question, "Did you stop on account of this crossing?" plaintiff answered: "Did I stop? No, sir. I stopped on the crossing because I couldn't help myself, when the accident occurred." "Before that had you stopped?" He replied: "We were coming to the depot on regular time, and we was coming at our usual rate. Never had any orders to stop at that crossing." Rule 37 of the Baltimore & Ohio Company, which plaintiff said was in force, is as follows: "Trains are run under the charge of the conductors thereof, and their directions relative to the management of trains will be observed, except in cases where such directions may be in violation of the rules of this company or of safety, in which cases enginemen will call the attention of conductors to the fact, as understood by them, and decline compliance. The same also holds good in all cases of doubt. Enginemen, as well as conductors, must in every case absolutely know that they are entitled to the track before proceeding. Conductors and enginemen will in all cases be held equally responsible." Also rule 80, as follows: "Pushing cars ahead of the engine is postively forbidden, except in cases of helpers on grades, or when impossibe to avoid it. In the latter case speed must not exceed four miles per hour, with man on lookout in front car in sight of engineman." Also rule 61, as follows: "Whenever, in the absence of special orders to do so, it becomes necessary to back a train in the opposite direction from that in which it is expected to move, it must be done with great care, and at a rate of speed not exceeding four miles per hour, keeping a flagman constantly not less than 1,500 yards in advance of the rear of train to warn any train that may be approaching. In all cases of backing a train, a competent man, the conductor if possible, must be stationed at the rear of last car to watch for signals or

obstructions, and to signal the engine and stop train whenever necessary. If a passenger train, he must hold bell cord in his hand in readiness to sound the engineman's alarm bell." Also rule 77, which is intended to carry out the statutory provision: "All engines and trains must come to a full stop not less than two hundred feet nor more than eight hundred feet from each railroad crossing, and not proceed until the crossing signal indicates their right to do so. Where there is no such signal, the engineman will send the fireman or brakeman ahead to ascertain that the way is clear, and to flag the train over the crossing." And in order to secure the safety and efficiency of its employes the Baltimore & Ohio Company had in force the following rules, Nos. 121 and 76, respectively: "The company does not wish or expect its employes to incur any risks whatsoever from which, by the exercise of their own judgment and by personal care, they can protect themselves, but enjoins upon them to take time in all cases to do their duty in safety, whether they may be at the time acting under the orders of their superiors or otherwise." "All employes must familiarize themselves with the general and special rules pertaining to their respective positions. If in doubt as to the meaning of any rule or special order, application must be made at once to proper authority for an explanation. Ignorance cannot be accepted as an excuse for neglect or omission of duty."

These rules are reasonable, and provided by the railroad company as well for the safety of its passengers and employes as for that of its own property and interests, and it is the imperative duty of all employes, especially those of the grade of conductors and engineers, whose responsibilities are so great, to thoroughly acquaint themselves with the rules, and to strictly observe them in the performance of their duties. Plaintiff was conductor in charge of this train, and as such it was not only his duty to obey the rules himself, but to see that all employes on the train did the same. On the contrary, he violated directly many of the rules of the company, including statutory rules, with such recklessness as is seldom found, not only endangering the lives of the passengers in his charge and the destruction of the property of his employer, but greatly endangering his own life. Plaintiff was in the position on

the train it was proper for him to occupy in pushing a train, which is about all that can be said for him. He failed to stop before the crossing, to have his hand upon the cord to sound the engineer's alarm bell and apply the air brake, to send a watchman ahead or to await the signal to proceed. Just as the collision was about to take place, plaintiff says he thought the best thing he could do to save the passengers was to stop the train by putting the air on, which he did by a handle underneath the car,—that he reached down underneath the car to get it and "put on the air just as he hit us." So, instead of using the more certain means of putting on the air by pulling the rope, he chose the unusual method of reaching under the car, which threw him between the colliding "dinkey" and car, whereby his head was badly injured. The former mode was the one provided, safe and effective; the latter, never intended to be so used, and under the circumstances most dangerous. If plaintiff had used ordinary care and precaution, this unfortunate occurrence would not have been brought about, by which he is left a mere wreck of a man perhaps for the rest of his life.

It is contended that the Baltimore & Ohio train on the main track had the right of way, and that, "although the plaintiff be guilty of negligence, which may have contributed to the injury, yet if the defendant or its servant knew of that negligence, or might have known of it by the use of care and diligence, and could then have prevented the injury to the plaintiff, then the plaintiff's negligence will not defeat him, the defendant's negligence being the proximate cause of the injury." It is true plaintiff's train had the right of way, but this fact did not authorize him to violate the law and the rules of the company made for his guidance and control, and the observing of which—indeed, of almost any one of which—would have prevented his injury. Who can believe, for a moment, from the evidence adduced by plaintiff in this case, that "his injury would have occurred from the defendant's negligence just the same if the plaintiff had been in no wise negligent," as in *Carrico* v. *Railway Co.*, 39 W. Va. 87 (19 S. E. 571). "When a given state of facts is such that reasonable men may differ upon the question whether there was negligence or not, the determination of the matter is for the jury."

*Raines* v. *Railway Co.*, 39 W. Va. 50, (19 S. E. 565, syl. 2). "But when the facts are such that all reasonable men must draw from them the same conclusion,—when there is no room for two reasonable opinions about it,—then it becomes a question of law for the court." *Id.* syl. 3. I am a firm believer in the right of trial by jury, and jealous of any encroachments on that right, and have feared sometimes that the circuit courts infringe upon the province of the jury; but in a case where the evidence is so clearly deficient as to give no support to a verdict for plaintiff if so rendered, there can be but one course to pursue, and that is for the court to exclude the evidence from the jury, and end the case, and in this case the court did not err in so excluding the evidence.

As to the third and fourth bills of exceptions to the action of the court in sustaining objections to certain questions, it matters not what the answers may have been. The result could not have been affected by them. For the reasons stated, as much as my sympathies go out to the unfortunate plaintiff, the judgment of the circuit court must be affirmed.

*Affirmed.*