## CHARLESTON.

RITZ *v.* CITY OF WHEELING.

Submitted June 6, 1898—Decided November 23, 1898.

1. VERDICT—*Directing Verdict—Evidence—Excluding Evidence.*

When, upon the facts conceded as shown, a verdict for the plaintiff would be against law, the court should, on motion, exclude the plaintiff's evidence, and direct a verdict for the defendant. So it is also where, if the essential facts claimed to be proven by the evidence were proven, a verdict for plaintiff would be justified by the law, yet the evidence does not appreciably tend to prove them, but so plainly fails to do so that two reasonable men should not differ as to its insufficiency. (p. 263).

2. NEGLIGENCE—*Trespasser—Injury to Trespasser.*

A landowner is under no duty to a mere trespasser to keep his premises safe, and the fact that the trespasser is a child does not raise a duty where none otherwise exists. Such a trespasser, injured on such premises, cannot recover of the landowner by reason of the unsafe condition of the premises, unless this negligence be so gross as to amount to a wanton injury. *Frost* v. *Eastern R. R.*, 64 N. H., 220, (9 Atl., 790). (p. 264).

Error to Circuit Court, Ohio County.

Action by John S. Ritz against the City of Wheeling. Judgment for defendant, and plaintiff appeals.

*Affirmed.*

CALDWELL & CALDWELL, for plaintiff in error.

HENRY M. RUSSELL, FRANK W. NESBITT, and S. O. BOYCE, for defendant in error.

BRANNON, PRESIDENT:

Sarah Ritz, a child of less than five years, was drowned in a reservoir maintained by the City of Wheeling to furnish water for public use, and the administrator brought action against the city, and upon the trial the court excluded the whole of the plaintiff's evidence from the jury as insufficient to warrant a verdict, and directed the jury to find for the defendant, and upon such a verdict gave judgment for defendant, and the plaintiff appeals. The case is not one involving credibility of witnesses, or weight of evidence, or the proper inferences and deductions from evidence, which are matters proper for the consideration of a jury; for the material facts of the case are undisputed, and the case presents simply the question of law whether, upon the facts, a liability rests on the city. The question is, was the city guilty of negligence? Negligence is, most frequently, a question of mixed law and fact, proper to go before a jury; but, where the facts are such that ordinary men will not differ about their effect in not showing negligence, it becomes a question of law for the court, not one of fact for the jury, and, if the evidence is not colorably sufficient to show negligence, the court ought to take the case from the jury and direct a verdict against the plaintiff. When the evidence is so clearly deficient as to give no support to a verdict for plaintiff, if rendered, the evidence should be excluded from the jury. *Klinkler* v. *Iron Co.*, 43 W. Va., 219, (27 S. E. 237); 1 Sherm. & R. Neg.(2d Ed.) § 56. Where the case turns on the weight and effect of the evidence in proving or not proving facts necessary to support the action, and the evidence appreciably goes to prove such facts, it ought to go to the jury, as a verdict upon such evidence gives it a force which it might not have with the judge before verdict, and fortifies the case more against the action of the court, as the court cannot set the verdict aside unless plainly and decidedly contrary to or without evidence; but where the

case is not such, but one of undisputed or indisputable facts, leaving it only a matter of law whether the facts show a liability on the defendant, the court should take the case from the jury, and direct a verdict, if the evidence shows no case for the plaintiff, because, if there were a verdict for him, it would be a finding against law, and the court always annuls a verdict against law upon conceded or indisputable facts. It is different then from a motion for a new trial, where the verdict rests on the credibility of witnesses or the weight and effect of evidence. *Grayson's Case*, 6 Grat., 712; *Poling* v. *Railroad Co.*, 38 W. Va., 645, (18 S. E. 772), (Syl. point 8). Likely this distinction is not always thought of. Plainly, if the court does right in excluding the evidence, it commits no error in directing a verdict, as such a verdict is the inevitable consequence of such exclusion. There cannot then be any different verdict.

Let us see, then, whether the city is liable. In maintaining the reservoir, the city was engaged in a lawful act, within its power and duty as a municipal corporation,—a governmental act; and I do not see, in the absence of a statute imposing liability, if an open question, how it could be held liable, even if guilty of negligence, under the principle stated in *Brown's Adm'r* v. *Town of Guyandotte*, 34 W. Va., 299, (12 S. E. 707), and 1 Beach, Pub. Corp. § 749: "Where a city, under authority of a general law, undertakes a work for the sole use and benefit of the public, it is not liable for an injury caused by the negligent or defective act of its servants, unless some statute, either directly or by implication, gives a private remedy. This rule has been applied against a traveler injured by negligent blasting while excavating the foundation of a 'public school house, and against a child injured by reason of an unsafe staircase of a school house, and a dangerous excavation in a schoolhouse yard. The same rule has been applied in favor of cities in respect to town houses and court houses, and public grounds, like Boston Common. And it makes no difference, in the application of the rule, whether the injury is caused by a negligent act done in the direct performance of the public work, or is received after the completion of the work." You cannot sue the state

for such cause, unless it granted remedy. Why sue a city when performing a governmental function? One citizen is as much guilty of negligence as are others; all are guilty alike. Contrary doctrine holds a city liable as if an individual engaged in private work for private ends. But most authorities oppose this view. The law seems to be that a city or town, in the use of its property, though for purely public purposes, is liable for negligence as private owners. *Gibson* v. *City of Huntington*, 38 W. Va., 177, (18 S. E. 447); 2 Dill. Mun. Corp. § 985; 15 Am. & Eng. Enc. Law, 1141, 1149, 1155. But those authorities hold that, to make a municipal corporation liable for injury received from its use of its property, negligence must be shown. Thus we encounter in this case the question whether the city was guilty of negligence to which we can attribute the death of the little girl. There can be no negligence charged upon a person unless he rests under a duty to the person complaining of damage at his hands; for if there is no duty violated, though there may be grave damage befalling the complaining party, he has no ground of action. It is a case denominated in law as *"damnum absque injuria,"*—damage done, but without violation of a right in the injured party; a misfortune unaccompanied by a breach of duty by the party inflicting the injury. Sherm. & R. Neg. § 8. The reservoir and the land containing it were the private property of the city, used, not as a park or place of public resort or common, but only for reservoir purposes. The child was a trespasser, if you can say a child can be a trespasser. It was a trespasser, in legal sense; that is, it was on this property without right. The city was not bound to watch it. It could not be liable to it only for wilful or wanton injury. I would, as an original question, hold that the law testing this case is laid down in 1 Beach, Pub. Corp. § 754, as follows: "A municipal corporation is not liable to a trespasser who goes, without license or invitation, upon its land, though unmolested, for mere pleasure or to gratify curiosity, and there meets with an injury through the corporation's negligent management of its property; and no distinction is made in favor of an infant child so receiving an injury. In such a case the municipality owes no special duty to a child straying from its par-

ents, and the duty of protecting it is not shifted from its parents to the municipality because it chances to escape from their care. This is the general rule applicable to those who trespass on private lands, and there is no reason why municipal corporations should not have the benefit of it; but, of course, it has no application to highways, where all have a right to be."

I repeat, this is so, because no legal duty rests on the corporation. Our own cases sustain the doctrine of immunity where there is no duty placed by the law upon the party sought to be charged with damages. By reason of this doctrine, the case of *Woolwine's Adm'r* v. *Railway Co.*, 36 W. Va., 329, (15 S. E. 81), denied relief to a man who visited a telegraph office kept by a railroad company to make a call of friendship on the operator, and was injured by negligence of the railroad's servants. And by reason of this doctrine, in *Poling* v. *Railroad Co.*, 38 W. Va., 645, (18 S. E. 782), no damages were conceded for the death of a person standing on the railroad grounds, and killed by reason of a defective apparatus used to catch mail from a passing train. And by reason of the same doctrine, in *Dicken* v. *Coal Co.*, 41 W. Va., 511, (23 S. E. 582), recovery was denied for the injury of a little child crippled by a car while on a tram road of a salt company. Such must be the ruling as long as private ownership in property is recognized, as to hold otherwise would detract from the lawful dominion of a man over his own property, and contravene the canon of property expressed in the *Dicken Case*, that "a party who is using his own property in a lawful way cannot be guilty of a breach of duty to any one."

These cases of our own decide the case against the plaintiff, but the importance of the case and briefs of counsel justify reference to other states. In *Clark* v. *Manchester*, 62 N. H., 577, a child of four years was drowned in a reservoir which had once been used by a city, but its use had ceased, the fence was removed, it was partly filled up, and but a portion yet had water in it. Children played there. A field was near by where ball playing and other amusements went on. The child, while passing along a path at the reservoir fell into it. It was held that the city was not, without a statute, liable for neglect of a public corporate

duty, and that the city owed no duty to one going upon its
land for pleasure or curiosity, unless the negligence be so
gross as to amount to a wanton infliction of injury, and that
no distinction is made in favor of an infant.   In *Grindley*
v. *McKechnie*, 163 Mass., 494, (40 N. E. 764), a city kept a
sewer, and by it a hole had been formed by the action of
the water, and was filled with water, the hole being fifty
feet from the street, along which was a fence, and some
boards had been torn from it, and a path led from this
opening to the sewer.   A child went through this opening,
along the path, to the sewer, and was drowned.   It was
held that the city owed no duty to the child to keep the
sewer or hole in safe condition, and was not liable in dam-
ages.   Similar decisions, based on principles above stated,
are to be found in *Murphy* v. *City of Brooklyn*, 118 N. Y.,
675, (23 N. E. 887); *Gillespie* v. *McGowan*, 100 Pa. St.,  441;
*Benson* v. *Traction Co.*, 77 Md., 535, (26 Atl., 973); *Charle-
bois* v. *Railroad Co.*, 91 Mich., 59, (51 N. W. 812); *Moran*
v. *Pullman Palace-Car Co.*, (Mo. Sup.) 36 S. W. 659; *Over-
holt*, v. *Vieths*, 93 Mo., 422, (6 S. W. 74); *Klix* v. *Nieman*, 68
Wis., 271, (32 N. W. 223); *Dobbins* v. *Railway Co.*, (Tex.
Sup.) 41 S. W. 62; *Richards* v. *Connell*, 45 Neb., 467, (63 N.
W. 915); *City of Omaha* v. *Bowman*, 52 Neb., 293, (72 N. W.
316); *Peters* v. *Bowman*, 115 Cal., 345, (47 Pac., 113, 598).
They are cases of small children drowning in resevoirs or
pools of water, in most instances unprotected by fence,
whereas in this instance the reservoir was well fenced.
Those cases are apposite to this in similarity of source of
injury and character of the persons injured.   Many cases
may be cited of injury from other causes to persons on
ground occupied by others.   They involve the same prin-
ciple, regardless of different cause of injury; that is, that
the owner of the ground owed no duty to one having no
legal right to be upon the ground.   Recovery was refused
in *Gay* v. *Railway Co.*, 159 Mass., 238, (34 N. E. 186,) to a
boy ten years old, who went on a car unlawfully standing
in a street, and was injured by a recoiling brake not prop-
erly fastened.   It was said that, if standing on the com-
pany's ground, it would be most clear that the company
would not be liable; and, as it was, the court said that the
defendant was not liable.   In *Railway Co.* v. *Edwards*

(Tex. Sup.) 36 S. W. 430, an eight year old child in the lot of the company open on one side was crushed by a pile of plank improperly piled. In *Talty* v. *City of Atlantic*, 92 Iowa, 135, (60 N. W. 516), child was injured by going down path from street, and crushed while digging sand by a bank caving. It was held that the city was not bound to fence the path. In *O'Conner* v. *Railroad Co.*, (La.) 10 South., 678, children usually played in a block with openings in fence, and one of seven years was injured. In *Railroad Co.* v. *Bockoven* (Kan. Sup.) 36 Pac., 322, a child of five years was killed while swinging, by a falling gate, which was defective and dangerous. In *Ratle* v. *Dawson*, 50 Minn., 450, (52 N. W. 965), a child of three years was playing in a pit caused by taking out sand, and wholly unguarded, in a vacant lot, and was killed by a falling embankment left in dangerous condition. Children usually played in the sand, as it was attractive to them. It was held there could be no recovery, as there was no duty on the owner to keep his premises safe. In *Barney* v. *Railroad Co.*, 126 Mo., 372, (28 S. W. 1069), the railroad owned a yard not fenced, where children went to play, and one of six years jumped on a train and was injured. Held no duty to the child was on the company. In *Vanderbeck* v. *Hendry*, 34 N. J. Law, 467, defendant owned a board yard in a populous part of city, frequented by children, and a child injured by a falling pile of lumber, not in safe condition, was denied recovery, because no duty as to the child rested on the defendant to pile the plank properly. In *Clark* v. *City of Richmond*, 83 Va., 355, (5 S. E. 369), the city had made excavation on land of another, who had erected a wall along the street, and a child of six years walked on the wall, and fell into the pit. The court said the city owed him no duty, as he went upon property where there was no duty owing him. *McGuiness*, v. *Butler* (Mass.) 34 N. E. 259, denied relief to a child injured by pulling upon himself a slab left by the owner leaning against his shop, one end in the street and the top a few inches inside his line.

But it is contended that, while this doctrine that no duty lies upon the owner of property to keep it in safe condition as to trespasser applies to persons who have attained

years of discretion, the case is wholly different as to children of tender years; that as to them the owner cannot use the property as he chooses, but must so use it as not to injure them.   Perhaps this is stating the position of plaintiff's counsel too broadly.   The position is that the owner cannot erect or continue on his property any structure, establishment, or machinery that is at the same time in dangerous condition, and calculated to attract and allure young children to it.   It must be both to sustain a recovery.   This position is sought to be supported by what is called the "Turn-table Cases" (*Railroad Co.* v. *Stout*, 17 Wall., 657, and other cases following it).   In that case a boy was injured while playing on a railroad turn-table left unlocked, and was allowed a recovery.   The case is most unsatisfactory.   The opinion is not clear.   It seems to go upon the idea, as an element of decision, that to deny

recovery it was necessary to impute contributory negligence to a child; whereas the matter in that case did not, nor does it in this case, involve contributory negligence, which is foreign to our question, which question is whether the defendant owes duty to a child wandering upon the defendant's premises and injured by its lawful works. A  d in the *Stout Case* the real point of the decision is that the case should have gone to the jury, rather than a flat decision of defendant's liability, though I do not say it was not involved.   But the *Stout Case*, if carried to the length to which it is sought to be carried, would exact of every property owner the utmost watchfulness, vigilance, and expenditure to  guard against hr-t to children, else he would be every moment in danger of ruinous damages. It attacks the right of free use of one's property in lawful business.   A railroad liable because it happened to leave a turn-table unlocked, as turn-tables often are, on its own track,—a necessary {appliance {|·in a lawful business! Ought a farmer be liable for failing to put a picket fence around his pond necessary for his cattle?   If he does not, some little boy will climb the fence into the farmer's field, drown in the pond, and the farmer is sued on the same principle.   The dam that contains water to turn the mill wheel, having a path around it shaded with willows, is very alluring to the child and the man.   Must the miller inclose

it? The canal, with its towpath and frogs, is very attractive to the little boy or girl, and dangerous too. If a child drown in it, is the company liable? How many more instances of things useful in lawful business, and withal very attractive to children, and very dangerous, might be put? And the rule contended for says that, if the thing causing the injury be attractive or seductive, the liability attends it. How many things are, or may be, so to children? "A child's will is the wind's will." Almost everything will attract some child. The pretty horse or the bright red mowing machine, or the pond in the farmer's field, the millpond, canal, the railroad cars, the moving carriage in the street, electric works, and infinite other things, attract the child as well as the city's reservoir. To what things is the rule to be limited? And where will not the curiosity, the thoughtlessness, and the agile feet of the truant boy carry him? He climbs into the high barn and the high cherry tree. Are they, too, to be watched and guarded against him? As was well said in *Gillespie* v. *McGowan*, 100 Pa. St., 144, this rule "would charge the duty of the protection of children upon every member of the community except their parents." A very onerous duty! *Nolan* v. *Railroad Co.*, 53 Conn., 462, (4 Atl., 106), holds that the same precautions by property owners apply to infants and adults.

I am guilty of no undue assumption in condemning the *Stout Case*, as it has received in some courts, the most eminent in the land, open condemnation; and in others criticism tantamount to condemnation; and some which followed it limit its application to its facts or desire to recant. *Walsh* v. *Railroad Co.*, 145 N. Y., 301, (39 N. E. 1068); *Frost* v. *Railroad Co.*, 64 N. H. 220, (9 Atl., 790); *Daniels* v. *Railroad Co.*, 154 Mass., 349, (28 N. E. 283); *Barney* v. *Railroad Co.*, 126 Mo., 372, (28 S. W. 1069); *Railway Co.* v. *Edwards*, (Tex. Sup.) 36 S. W. 431; *Dobbins* v. *Railroad Co.*, (Tex Sup.) 41 S. W. 62; *Railroad Co.* v. *Bockoven*, (Kan. Sup.) 36 Pac., 322; *Peters* v. *Bowman*, 115 Cal., 345, (47 Pac., 113, 598); *Catlett* v. *Railway Co.*, 57 Ark., 461, (21 S. W. 1062); *Bishop* v. *Railroad Co.*, 14 R. I., 320.

Here I may fitly add that the cases cited denying recovery were cases of infants of tender years. Are they all

wrong, running through so many years?  Is our own *Dicken Case* wrong?   And the *Woolwine* and *Poling Cases*?   Another reason against applying the *Stout Case* to mulct the City of Wheeling in damages is that, as often construed, that case only applies to "dangerous machinery."   Several courts which followed it have since said it ought to be limited to its particular facts.   Whether the distinction between "dangerous machinery" and other means of injury be clear or not, several courts and text writers have made it.   Railroad cars held not such "dangerous machines." *Barney* v. *Railroad Co.*, 126 Mo., 372, (28 S. W. 1069); *Catlett* v. *Railroad Co.*, 57 Ark., 461, (21 S. W. 1062).   Cars are attractive to children, but the law does not require a guard to keep children from standing cars.   *Railroad Co.* v. *McLaughlin*, 47 Ill., 265.

Now, I do not suppose this reservoir of the city would come under the head of "dangerous machinery."   If so, what structure or establishment might not?   At any rate, if that is "dangerous machinery," hundreds of necessary things would fall under this head of liability not heretofore regarded as dangerous and attractive to children, and greatly endanger the maintenance of many things necessary in life and business, and be an enormous burden to guard and watch with never sleeping eyes.   Strange to me the idea that such a reservoir can be made to come under this rule.   And I say that the reservoir is not "dangerous" in that sense.   And I say, with greater confidence, that it is not specially "attractive" in that sense.   If not, there can be no recovery in this case; for on that narrow ground the case hinges.   Hence the *Stout Case*, does not apply.

But a most important matter is, what is the negligence claimed to sustain this action?   It is that there was a gate of entry into the inclosure containing the reservoir, which was sometimes open, and that there was an opening under the picket fence several feet deep to allow water coming into the reservoir inclosure from the hill above, from rain, to pass out so as to keep it from entering the reservoir and polluting its water.   The reservoir was inclosed with a high, strong picket fence.   It does not appear how the child entered the inclosure, but likely through the opening under the fence.   Now, most of the cases above will show

that the city was not bound to fence, but it did securely fence, the reservoir. It adopted a reasonable precaution, and did all that reasonable care would exact. Do the gate and drain, things indispensable, convict the city of want of ordinary care or gross negligence? Surely not. The place was reasonably safe. Though people and children did sometimes go upon the city land containing the reservoir, and along the narrow path along the fence on the east side over the high, steep ground, almost a precipice of hundreds of feet, to watch games of baseball in a field below, yet there was no invitation by the city to do so. The place was uninviting and dangerous, and there was no ground for the city to anticipate that parents would allow their children there, on very dangerous ground, or that one would crawl under the fence, through this single necessary opening. The city used all due precaution. This opening was at the remote end of the inclosure, away from houses a considerable distance, and at the end of the path. The path was along the fence, was only two feet wide, and very close to the fence, and the whole space between the fence and precipice was only that wide,—a path, not a highway, and unlikely to invite people. It was not bound to use the utmost possible care to guard infallibly against all possible accidents. In *Gavin* v. *City of Chicago*, 97 Ill., 66, it was held that the city must keep a bridge in a reasonably safe condition, and that, though it could be made to be free from accident to playing children, yet it was not bound to so construct it as to be safe for children playing upon and around it, or place guards or mechanical contrivances to keep children off the bridge. An owner is not required to provide against remote and improbable injuries to trespassing children. *Car Co.* v. *Cooper*, 60 Ark., 545, (31 S. W. 154, 46 Am. St., Rep., 216), and note. One using his property in a lawful way is not under obligation to save others from inevitable accident. "He performs his duty when he uses reasonable care and precaution." *Cosulich* v. *Oil Co.*, 122 N. Y. 118, (25 N. E., 259). Even if the city owed a duty to the child, it was only of ordinary care. 2 Sherm. & R. Neg. (2d Ed.) § 705.

The city had a watchman there, though by no means was this required, as above authorities show. The watch-

man was not present or did not happen to see this child. The fact that it did keep a watchman did not bind the city to duty not fixed by law or a higher degree of duty than the law fixes, if any. The fact shows that the city took all reasonable precautions, and this is an unfortunate, inevitable accident, for which it is not responsible. The South Carolina court stated the point clearly, saying, as to children that there is a liability only "when, from the peculiar nature and open and exposed position of the dangerous defect or agent, the owner should reasonably anticipate such injury." How can we say in this case that a drain at the end of a narrow fringe of two feet, two hundred yards long, between a fence and precipice, just where the fence butted up against a high hill cut down in the construction of the reservoir, not where people usually went, very inconvenient to walkers, we may say dangerous, where there was nothing to invite them, but everything to deter, and the common ground, if such, was on the other side of the reservoir inclosure, a good distance and cut off from this point,—the point where the drain emerged being secluded, and the best point for it, and where no one would be expected to go,—how can we say the city "should reasonably anticipate injury" there, in the language of the South Carolina court? Busw. Pers. Inj. § 77, states the rule, as to children trespassing, to be that, to charge the defendant, it must appear that the act was "willfully mischievous, as by leaving a ferocious dog at liberty," and that it is to be deemed mischievous or wanton only when "the act was done in the ordinary course of his business, and by the use of appliances which do not, obviously and of necessity, expose all persons who may approach them to peril, or the exposure of which is not attended with some concealed danger." That is the test.

Now, would a farmer or millowner be liable because he left a drain under his fence and a child happened to crawl through it and fall into the pond? Certainly not. It is an unexpected, inevitable accident. Neither is Wheeling liable.

Counsel complain that the court would not allow as evidence a paper to show that the only title the city had to the land containing part of the reservoir was one vested in

it in trust as a common, and that it misappropriated it when it devoted a part of it to use for a reservoir. The city had years ago made this reservoir; had been for years in actual use of it for the purpose. It never was used as a common, in the sense of a park. Now, if the party who conferred the land upon the city, or his heirs, could stop its use for a reservoir, or in any manner complain of the act as a misappropriation, or if any one could do so, while the city was in the exclusive, unrestrained occupation of it, for reservoir purposes, it has the right to be looked upon as owner, and entitled to the immunity from damages, like any owner. Its title could not be put in question in this collateral way in this action. I think the paper was irrelevant,

Late reference is made to the case of *Rowzee* v. *Pierce*, (Miss.) 23 South., 307. That was an injunction to prevent a lot conveyed to a town for a park from being used as a site for a school house, and it was held that the use proposed to be made of it was against the purpose of the grant. To me it is plainly not relevant to this case. To restrain a city from diverting property to a different use from that contemplated in the grant is one thing; but the question whether it is, while in actual use of the land for such purpose, liable for an act claimed to be a negligent use of the property, which negligence does not consist in the application of the property to a use not contemplated, but in its mere handling of the property, is another question. The question here is whether the act of having the drain renders the city liable, no matter how it came by the land. Would the city be liable if the conveyance to it had been general, and not for a special purpose? I oppose imposing upon the innocent public heavy damages for the accidents and misfortunes which always have and always will attend human existence. The safety of the many is to be preferred to even the suffering and misfortunes of individuals. Judgment affirmed.

*Affirmed.*