# CHARLESTON

## SMITH, ADM'R, v. SUNDAY CREEK COMPANY.

### Submitted June 10, 1914. Decided June 30, 1914.

1. NEGLIGENCE—*Unsafe Premises—Duty of Owner.*
   To persons induced, allured or enticed by the owner to enter upon premises, or thereon by his express or implied invitation, he owes a higher degree of care, in having and keeping the premises reasonably safe, if such persons were mere licensees. (p. 608).

2. SAME—*Invitation to Enter on Premises—Implied Invitation.*
   An invitation to enter upon premises, within the meaning of the law of negligence, will be implied where the entry thereon at the instance of the owner is in connection with his business or for his benefit. *Railroad* v. *O'Malley,* 107 Ill. App. 600. (p. 609).

3. RAILROADS—*Use of Track as Pathway—Right of Tenant.*
   A tenant occupying a dwelling, and using therewith an out-house, on the premises of his employer, a coal company, which as a common carrier operates a railroad through the premises, located within a

few feet of the dwelling and out-house, forty feet apart, and who uses its track or a pathway beside it as the only reasonably convenient means of access from the dwelling to the out-house, is, while making such use of the track or pathway, neither a trespasser nor a mere licensee. He is thereon by full legal right. And the members of his family are entitled to a like right of way. (p. 609).

4. SAME—*Death of Person on Track—Direction of Verdict—Evidence.*
    Where, in an action against the company for the wrongful death of a child of such tenant and employee, it is proved by plaintiff that there was an incline in the track past the dwelling, and that intestate was killed, while on the pathway to the out-house, by the sudden starting and movement down the grade, without application of any external force, of a car left by the company thereon two hours before the accident, unblocked, and with brakes unset, it is error on the part of the trial court, without any proof by the company, to exclude plaintiff's evidence and direct a verdict for defendant. (p. 611).

Error to Circuit Court, Kanawha County.

Action by S. P. Smith, Sheriff, etc., against Sunday Creek Company. Judgment for defendant, and plaintiff brings error.

*Reversed and Remanded.*

*Cato & Bledsoe,* for plaintiff in error.

*Brown, Jackson & Knight,* for defendant in error.

LYNCH, JUDGE:

Defendant is a corporation engaged in the mining of coal, and as a common carrier in the operation of a railroad which affords transportation facilities from its mines. On April 5, 1909, it had completed and equipped ready for use, but had not theretofore used, a spur from its main line to its mine 109. Ignatius Pawlak, as its tenant and employee, occupied a dwelling, owned by it, located within a few feet of the spur track, and therewith used a small out-house or water closet about the same distance from the track and forty feet from the dwelling. Between the two houses, a path along the track, or, as one witness says, the track itself, was the only reasonably available walkway—the one generally used by pedestrians in passing through defendant's property thus

occupied by Pawlak, and by the members of his family in going to and from the water closet. A mud hole and an embankment made other means of access thereto either inconvenient or unfit for such use. Four houses were owned by defendant near the spur in that vicinity, and all of them were occupied by persons in its employ, who habitually used the path and the track in going to and from its mines.

About eight o'clock in the evening of April 5, Lottie Pawlak, a four year old daughter of Ignatius, while on the walkway to the closet, was struck and killed by a "buck jimmy", or a five-ton car, owned by defendant and used by it to haul and dump ashes for ballast on the track. On that day its employees had thus used it; but left it, unblocked and with brakes "unset", on the spur near the Pawlak dwelling and between it and the closet. For some cause not explained, the car, as the child was passing along the outside of the track, started down a slight grade from the position it had occupied for two hours prior to the injury, and caused her to fall in front of it on one of the rails, where it ran against and killed her. To recover damages for the injury thus inflicted, plaintiff, as administrator brought this action. On motion, the trial court excluded plaintiff's evidence and directed a verdict for defendant.

Did the company owe deceased any duty violation of which rendered it liable to her estate? The defense is predicated upon the theory that she was, at the time of injury, a trespasser. Under the circumstances detailed, that is not a sound legal conclusion. It is true, some of our cases hold that continued use, however prolonged, of a railroad right of way, except at a public crossing, does not make it a public walkway. Those who thus use it, with the knowledge and acquiescence of the owner, are, however, not trespassers. They become mere licensees. As such, they enjoy the privilege subject to the concomitant perils and the dangers incident to the legitimate use by the owner of its property for the purposes to which it was appropriated. *Woolwine* v. *Railroad Co.*, 36 W. Va. 392; *McVey* v. *Railroad Co.*, 46 W. Va. 111; *Railroad Co.* v. *Ormsby*, 27 Gratt. 455; *Railroad Co.* v. *Burge*, 84 Va. 63; *Railroad Co.* v. *Carper*, 88 Va. 556; *Rail-*

*road Co.* v. *Wilson,* 90 Va. 263; *Railroad Co.* v. *DeBoard,* 91 Va. 70; *Railroad Co.* v. *Corbin,* 110 Va. 700; *Railroad Co.* v. *Wiley,* 112 Va. 183.

Here, however, Pawlak, the father, was a tenant in the occupancy of a house owned by defendant, with the right to the use and enjoyment of the premises by himself and family, subject of course to the dominant use by it of its railroad trackage, with which neither he nor deceased interfered. Thus, the conclusion seems reasonable that deceased was not in any sense a trespasser.

When injured, Lottie Pawlak was of course on defendant's property, but not on its track. The presence of the car excluded her from the use thereof. Both dwelling and out-house were on its property. Each was intended for the use of members of the tenant family. She was on the walkway between the buildings, the path being along the outer edge and near the ends of the cross-ties. Having the right thus to use the property, none of the family may properly be deemed a mere licensee. Mere permissive use of premises, by express or implied authority, ordinarily creates only a license. Yet if the use is in connection with the business of the owner, or for his benefit, it is more than a mere license; and a greater degree of care is recognized on his part than in cases of mere licensees using the premises for purposes of their own. White, Per. Inj. on Railroads, §§ 859, 870; 29 Cyc. 454; 3 Elliot on Railroads, §§1248, 1249; 1 Thomp. Neg. § 978; 2 *Id.* §1719; 2 Sherm. & Redf. Neg. §485; 3 *Id.* §§704, 706; *Sesler* v. *Coal Co.,* 51 W. Va. 318; *Williams* v. *Coal & Coke Co.,* 55 W. Va. 84; *Nichols* v. *Railroad Co.,* 83 Va. 99; *Railroad Co.* v. *Brown,* 90 Va. 340; *Smith* v. *Association,* 48 W. Va. 236. Even one who resides as a boarder at the home of an employee, living in a house built by a railroad company at a point where crossing of a track is necessary, when injured thereon by the negligent running of a train, has a right of action. *McDermott* v. *Railroad Co.,* 28 Hun. 925, 91 N. Y. 654. The Pawlaks had occupied the premises for eleven months. Ignatius was a tenant and an employee working for defendant in one of its mines. Lottie was a member of this household. Her rights on the leased premises

were coextensive with his. If he could use the two buildings and the intervening walkway, so could she. That both could so use the buildings, and the usual means of access thereto, seems beyond the realm of doubt.

As the facts of the case last cited bear approximate similarity to the facts here, they are given somewhat in detail. Defendant owned certain dwellings within the limits of the city of Albany, one of which had been occupied for several years by Carroll. Plaintiff, McDermott, had been boarding with him for five years at the time of the accident. Carroll paid rent to defendant, and both he and McDermott had been in its employment as track hands. There was no way from the house in which they resided except over defendant's railroad track. It had not designated the way to be used by them. Plaintiff was struck and injured in the night time, while crossing the track to visit a brother, by the tender of a backing engine, which gave no warning of its approach. In the opinion, it is said: ''Of the legal rights of the occupants of its dwellings the defendant is presumed to have been informed; and, therefore, it knew that at the point where the injury occurred there was liable to be a human being. Without elaboration, it seems to be clear that the defendant does owe to human beings who it knows have a right to be, and are liable to be, on its tracks, when it is operating its trains, the duty of reasonable care. To hold otherwise, would be to decide that a party may wilfully be careless in doing an act which he knows may put another in jeopardy''. The charge of which defendant complained, but which the appellate court approved, in substance was that, as defendant had built the house and rented it to Carroll, and had also built and rented other houses at the same place, these facts gave to the occupants thereof a right of way for ingress and egress over its lands; that as it had not designated or defined any particular place as the one to be used, plaintiff could with propriety choose his own way, but in any event he was bound to exercise care and prudence in so doing and to avoid any unnecessary danger; that defendant was bound to use reasonable care in running its trains over the place where the injury occurred. That the lessor of property owes

to its lessee a right of way for ingress or egress to and from the property hired, the court in that case said, would seem to be too clear to admit of any doubt. See also *Nichol* v. *Railroad Co., supra.*

In general, the measure of the duty of an owner of property toward trespassers and bare licensees thereon is to refrain from willful or wanton injury. *Spicer* v. *Railway Co.,* 34 W. Va. 514; *Ritz* v. *Wheeling,* 45 W. Va. 262; *Huff* v. *Railway Co.,* 48 W. Va. 45; *Melton* v. *Railway Co.,* 64 W. Va. 168; *Bralley* v. *Railroad Co.,* 66 W. Va. 462; *Uthermohlen* v. *Boggs Run Co.,* 50 W. Va. 457. In the case of a railroad company, however, those operating its trains are charged with the duty of keeping a reasonable lookout for such persons on or in dangerous proximity to its tracks. The company is in no sense an insurer of their safety. Nor is it under any obligation to provide any special equipment or appliances for their benefit. But it must exercise ordinary care in the operation of its trains, under the conditions actually existing and with such equipment as has been provided, to avoid injury to persons walking on or near the track at a point where they may reasonably be expected to be found, after it sees or knows their danger or could have known it by the exercise of reasonable care. *Railroad* v. *Rogers,* 100 Va. 324; *Railroad Co.* v. *Denny,* 106 Va. 383; *Railroad Co.* v. *Sollenberger,* 111 Va. 606. But, where the person injured was induced, allured or enticed by the owner to enter upon the premises, or was thereon by his express or implied invitation, a higher degree of care is imposed to have and to keep the premises reasonably safe. *Sesler* v. *Coal Co., supra; Williams* v. *Coal & Coke Co., supra; Railroad Co.* v. *Moore,* 94 Va. 493; *Nichol* v. *Railroad Co., supra; Clarks* v. *Fehlhaber,* 106 Va. 803; *Hargrave* v. *Land Co.,* 111 Va. 84; 2 Sherm. & Redf. Neg. §485d; 3 *Id.* §§704, 706; 3 Elliott on Railroads, §1249. Here, the child had the legal right to be at the place it was when the injury occurred. Having that right, defendant owed her a higher degree of duty than it would had she been a trespasser or bare licensee.

Was it negligence to permit the "buck jimmy" to remain in the condition and position occupied by it at the time of

the injury? The degree of the incline in the track does not appear from the evidence. Evidently there was some. Otherwise, the car would not have moved, except by the application of some external force. That any act of the child did or could have caused any change in its position, whether the car was or was not standing on an incline, seems reasonably obvious. Presumably, she was not of sufficient strength to cause it to move, even if she had attempted to do so, of which attempt there is not the slightest proof. So we are forced to the conclusion that the movement was induced by the track grade and the car's weight thereon. Why it had not previously changed its position is unexplained, and perhaps unexplainable. But, in any event, defendant knew, either as a fact or as a legal inference, that there were children who occupied other houses belonging to it near the place where its employees left the car on the track when they quit work that evening, and who might be injured if the car moved down the grade, the probability of injury depending to some extent on the grade. With this knowledge possessed by defendant, or available to it, warranting knowledge in fact, it can not with reason be said no duty devolved on it to anchor the car, by brake or block, in order to prevent injury to persons, whether infants or adults, who, with its acquiescence or upon its invitation, were frequently using either its track or a walkway in close proximity thereto. See *Costello* v. *Railroad Co.*, 65 Barb. 92; *Shelby* v. *Railway Co.*, 3 S. W. (Ky.) 157; *Railroad Co.* v. *Kirk*, 90 Pa. 15; *Lange* v. *Railway Co.*, 91 S. W. (Mo.) 989; *Smith* v. *Railroad Co.*, 25 Kan. 738. If, as held in *Railway Co.* v. *Hundt*, 140 Ill. 111, the putting of a freight car in motion at a place where men are known to be or may be passing, without a brakeman upon it, and without other means of controlling its momentum, is evidence tending to prove negligence, why may not this be said of like evidence which shows defendant permitted the car to remain on an incline without any attempt to fasten it by brakes or otherwise? Whether such acts are sufficient to establish negligence to the satisfaction of the jury is ordinarily a question for its determination. *Railway* v. *Hundt*, 140 Ill. 111; *Railway Co.* v. *Stutts*, 144 Fed. 948;

*Railroad Co.* v. *Kirk, supra.* But it is expressly held in *Brown* v. *Railroad Co.,* 8 Rob. (La.) 45, that defendant was negligent in leaving a car standing, without chain or block, on an incline constructed in a highway, from which a strong wind put the car in motion, whereby it inflicted injury on plaintiff. The fact that a diligent search by court and counsel reveals few cases wherein was involved the negligence here imputed affords reasonable ground for the assumption that employees of railroads generally, if not universally, secure by some method all cars left standing and not in actual use or operation. Such security is in some states required by statute or by a rule of the operating company.

For the reasons stated, we think the trial court erred in directing a verdict for defendant. Its judgment will therefore be reversed, the verdict set aside, and a new trial awarded.

*Reversed and Remanded.*