MARGARET W. COOPER *v.* PRITCHARD MOTOR CO.

(No. 9717)

Submitted October 3, 1945. Decided December 4, 1945.

W. T. O'Farrell, Frank R. Lyon, and Brown, Jackson & Knight, for plaintiff in error.

M. O. Litz and H. D. Rollins, for defendant in error.

HAYMOND, JUDGE:

The plaintiff recovered a judgment for $1,500.00, based upon the verdict of a jury, in the Circuit Court of Kanawha County. At the instance of the defendant, who seeks reversal, the case is here on writ of error.

The defendant, Pritchard Motor Company, is, and for several years has been, engaged in the automobile

business in a brick building located at the northeast corner of Quarrier and Dunbar Streets in the City of Charleston, Kanawha County, West Virginia. In the conduct of its business it occupied and maintained a show room on the ground or street floor of the building for the purpose of displaying automobiles for sale. This room fronted thirty-two feet, eight inches on Quarrier Street. There were twenty-two feet of clear and transparent glass windows, eight feet in height, and a double door seven feet in width, with glass in it, in the front at Quarrier Street. The side of the room extending along Dunbar Street, contained three plate glass windows, each eleven feet long and eight or nine feet high. Above them was a series of smaller windows. In order to display the automobiles, the room was lighted by large candle power ceiling and flood lights. Near the rear of the room, and at a distance of forty-one feet, eight inches from Quarrier Street, there was an incline or raised section in the floor which extended, parallel with the street, completely across the floor to each interior side wall. This section of the floor, which is designated as a roll or bulge by counsel for the plaintiff, was eight inches wide and it joined and connected the rear and the front sections of the entire floor of the room. It was of a uniform width of eight inches and it rose in that space from an inch and a quarter to an inch and a half in height from the point of its junction with the front section to the place where it joined and fitted into the surface level of the rear section of the floor. The surface at the edge of the incline, where it came together with the front section of the floor, was slightly convex or arch shaped, rising gradually toward the back of the room, and its surface at the rear edge, where it joined that section, flattened out on a level with the floor at that point. The entire floor of the room was constructed of tile arranged in alternately placed black and white square blocks, except that the tile in the incline, and in the floor sections immediately adjoining it on each side, was black in color.

At and prior to the time of her injury, on January 22, 1941, the plaintiff, a married woman, was living in Charleston. As the result of a previously made appointment with a salesman of the defendant, relative to an exchange of her automobile in the proposed purchase by her of a new one from the defendant, she brought, during the business hours of that day, her automobile to the defendant's shop and garage, which were located immediately back of the show room. Leaving her automobile there to be appraised, she entered the room through a door in the rear. She had been in the front part of the room eight or ten times previously, but she had never before been in the rear portion, and she had not seen and did not know of the location or the existence of the incline. On her way forward, while walking diagonally across the room toward its front, she stepped on the incline, slipped and fell, and in so doing she sustained a severe injury to her right ankle and the sacroiliac region of her back. She at once telephoned for a doctor and then, accompanied by the defendant's salesman, she went to a nearby building on Quarrier Street where she received prompt medical treatment.

Upon the trial of the case no attempt was made by the plaintiff to prove that the room was insufficiently lighted, or that the floor, including the incline, was slippery, or that there was any foreign or dangerous substance on it that would ordinarily cause a person to slip or fall. No complaint was made that the material of which the floor was constructed, including the incline, was unsafe or defective, or that the workmanship was faulty. The sole contention of the plaintiff was that the location and the shape or contour of the incline, where it joined the front and the rear sections of the floor of the room, created a dangerous condition which rendered the floor unsafe. Upon the argument of the case in this Court, it was conceded by counsel for the plaintiff that her right to recover depended upon the location and the character of the surface of that part of the floor. Her coun-

sel say that the case involves an unusual and unheard of construction; that this is a case of an incline, or as they designate it, a roll, without utility, and with no reason for its existence, which extended completely across the room at a point where such a condition was not to be expected. In short, her claim is based upon the proposition that the existence and the maintenance of the incline constituted actionable negligence on the part of the defendant. The evidence introduced in behalf of the plaintiff dealt mainly with the location and the character of the incline in the floor, the plaintiff's lack of knowledge of its condition, the place and the manner of her fall, and the nature of her resulting injuries.

The plaintiff, while testifying about the incline, which she spoke of as an offset in the floor, when asked how she happened to fall, replied that her fall was due to the offset. When further questioned concerning the nature of the offset, she stated, in effect, that she did not know it because she never examined it. A witness for the plaintiff, John B. Evans, who had formerly worked in the room and who was in the building at the time she fell but did not see her do so, testified that he knew the condition and the location of the incline, that he might have slipped on it occasionally but did not fall, and that during the period of about a year from May, 1940, until sometime in 1941, while he worked there, he might have seen someone else slip on the incline, but that he never saw anyone fall at that place. There was no evidence that any person, other than the plaintiff, ever had fallen on the floor. The plaintiff also admitted that shortly after her fall she might have told the defendant's salesman that she had a weak ankle and that she turned it for that reason. This conversation related to the condition of her ankle at the time she fell.

On the question of the use and the condition of the floor, witnesses produced by the defendant testified that it had been maintained by the defendant since the year 1931 in substantially the same condition that it was in at the time the plaintiff was injured; that during that period of time an average of one hundred persons daily

for each day in each week had, without mishap, visited and passed over it, including the incline; that no complaint had ever been made concerning its condition; that no person other than the plaintiff had ever been injured on it; that it was the same type of floor in general use in the automobile display business; that it was well lighted at all times; that the floor was not as slippery as the usual tile floor because it had been installed and used for a number of years and had a tendency to get rough in such circumstances; and that the floor was no slicker than the floor in the court house in which the trial was held.

At the conclusion of the evidence for the plaintiff, and again after all the evidence was admitted, the defendant made a motion that the court direct a verdict in its favor, which motions the court denied. The plaintiff offered, and the court gave, two instructions, to one of which the defendant objected. The defendant offered five instructions, one of which the court gave; and the other four, among which was a peremptory instruction to find the defendant not guilty, the court refused to give. The defendant duly excepted to these rulings. The case having been submitted to the jury, it returned a verdict in favor of the plaintiff. Upon this verdict the court entered the judgment which the defendant seeks to reverse in this Court.

The principal grounds relied upon for reversal are: (1) The defendant was not negligent; (2) the plaintiff was guilty of negligence barring her recovery; and (3) the trial court erred in refusing to give the rejected instructions offered by the defendant, and in particular, the peremptory instruction which would have directed the jury to return a verdict in favor of the defendant.

The primary question, upon which the decision here turns, is whether the condition and the location of the incline or roll in the floor of the show room occupied and operated by the defendant at the time the plaintiff was injured, constituted negligence upon the part of the de-

fendant. Consideration of the other points of error depends upon the determination of this decisive and controlling point.

It is clear that the relationship existing between the plaintiff and the defendant at the time of her injury was that of owner or occupant and invited person. 20 R. C. L. 66. The plaintiff came to the defendant's place of business, at the express invitation of the salesman who was acting in behalf of the defendant, for the purpose of negotiating and concluding a business transaction. It should be noted that this case is not predicated upon the doctrine of the maintenance of a nuisance, which was involved in *Spears* v. *Goldberg*, 122 W. Va. 514, 11 S. E. 2d 532, 12 S. E. 2d 513, in which a judgment adverse to an injured plaintiff was reversed by this Court. The defendant here was not an insurer of the safety of the plaintiff; and the doctrine of *res ipsa loquitur* does not apply to the facts of this case. The mere fact that a plaintiff sustains an injury does not warrant its application. *Hunker* v. *Warner Theatres*, 115 W. Va. 641, 177 S. E. 629. Here the alleged negligence of the defendant is the basis of the plaintiff's claim, and if the evidence does not disclose a situation or a condition from which the jury could reasonably find negligence upon the part of the defendant, the plaintiff can not recover. In the circumstances developed by the evidence the defendant owed the plaintiff, who occupied the legal status of an invited person, the duty of exercising ordinary care to keep and maintain the premises under its control, including the floor of its show room, in a reasonably safe condition. *Lowe* v. *Early*, 119 W. Va. 690, 195 S. E. 852; *Starcher* v. *South Penn Oil Co.*, 81 W. Va. 587, 95 S. E. 28; *Smith* v. *Sunday Creek Co.*, 74 W. Va. 606, 82 S. E. 608; *Smith* v. *Parkersburg Co-Operative Association*, 48 W. Va. 232, 37 S. E. 645; 3 Cooley on Torts (4th Ed.), Sec. 440; 20 R. C. L. 55. Likewise. there was a corresponding duty upon the part of the plaintiff to make reasonable observation of the floor on which she was walking. *Shorkey* v. *Great A. & P. Tea*

*Co.*, 259 Mich. 450, 243 N. W. 257. In the absence of any proof that the room was not sufficiently well lighted, or that there was any defect in the material or faulty workmanship in the construction of the floor, or that there was any foreign or dangerous substance upon the floor which would cause an ordinarily prudent person to slip and fall, the only issue to be resolved is whether the location, the character, or the condition of the incline in the floor, under the ordinary circumstances which the evidence shows to have existed, rendered the floor of the show room dangerous or unsafe for use by the plaintiff. If it was not dangerous or unsafe, but was in a reasonably safe condition, then the defendant was not guilty of negligence, and the court should have given the peremptory instruction asked by the defendant and should have directed the jury to return a verdict in its favor.

The evidence is clear and undisputed that no person, other than the plaintiff, among the great number of customers who regularly visited and used the show room maintained by the defendant, as well as the general public upon frequent occasions, during a period extending as far back as the year 1931, had ever fallen or sustained any injuries in the use of the floor, and that during all that time it was in substantially the same condition it was in when the plaintiff slipped and fell. It appears that the floor was of the same type as that in general use for the same purposes, and that it was no more slippery than any other tile floor in any ordinary business establishment.

It does not appear that there was any latent or concealed defect in the floor, and the evidence tends to show that the location and the condition of the incline were plainly visible to the plaintiff if she had looked. Apparently she did not do so for she stated that she did not know the nature of the incline, which she spoke of as an offset, as she did not examine it.

The principle is firmly established that generally the question whether the defendant is negligent in cases in-

volving the safe or the unsafe condition and character of his premises, which he invites others to visit for business or other purposes, is for the determination of the jury. *Spears* v. *Goldberg*, 122 W. Va. 514, 11 S. E. 2d 532, 12 S. E. 2d 513; *Lindsey* v. *Bluefield Produce Co.*, 91 W. Va. 118, 112 S. E. 310; *Smith* v. *Sunday Creek Co.*, 74 W. Va. 606, 82 S. E. 608. It is, however, an equally well settled principle of law that when the material facts are not in dispute, and reasonable men can draw only one conclusion from them, the question of negligence becomes one of law for the court. *Wood* v. *Shrewsbury*, 117 W. Va. 569, 186 S. E. 294; *Barron* v. *B. & O. Railroad Co.*, 116 W. Va. 21, 178 S. E. 277; *Linville* v. *C. & O. Railway Co.*, 115 W. Va. 610, 177 S. E. 538; *Craft* v. *Fordson Coal Co.*, 114 W. Va. 295, 171 S. E. 886; *Daniels* v. *Railway Co.*, 94 W. Va. 56, 117 S. E. 695; *Reilly* v. *Nicoll*, 72 W. Va. 189, 77 S. E. 897; *Ketterman* v. *Dry Fork Railroad Co.*, 48 W. Va. 606, 37 S. E. 683; *Klinkler* v. *Wheeling Steel & Iron Co.*, 43 W. Va. 219, 27 S. E. 237; *Raines* v. *Railway Co.*, 39 W. Va. 50, 19 S. E. 565.

The facts of this case, bearing upon the condition of the floor of the show room and the manner in which the plaintiff sustained her injuries, are not disputed. Here the burden of proving negligence rests upon the plaintiff. *Christian* v. *C. & O. Railroad Co.*, 78 W. Va. 378, 89 S. E. 17; *McCreary* v. *Railway Co.*, 77 W. Va. 305, 87 S. E. 374. This she has failed to do. She has failed to establish facts from which a jury could reasonably find that the defendant, in its use and maintenance of the floor, under the conditions shown by the evidence, at the time the plaintiff was injured, was guilty of negligence. In an action founded on negligence the plaintiff can not recover unless he shows affirmatively, by the evidence in the case, that the defendant was guilty of negligence and that his negligence was the proximate cause of the injury for which the plaintiff seeks to recover. *Ice* v. *County Court*, 77 W. Va. 152, 87 S. E. 75; *Webb* v. *Tobacco Co.*, 121 W. Va. 115, 2 S. E. 2d 898.

The evidence shows that the floor, under the conditions existing at the time of the plaintiff's injury, was in a reasonably safe condition for use by the plaintiff, and that the defendant, in so keeping and maintaining it, observed the duty which the law imposes upon it in that respect.

The refusal of the trial court to sustain the motion of the defendant for a directed verdict, made at the conclusion of the evidence, and the refusal to give the peremptory instruction offered by the defendant, which would have directed the jury to render a verdict in its favor, constitute reversible error. *Wood* v. *Shrewsbury*, 117 W. Va. 569, 186 S. E. 294; *Ice* v. *County Court*, 77 W. Va. 152, 87 S. E. 75; *Klinkler* v. *Wheeling Steel & Iron Co.*, 43 W. Va. 219, 27 S. E. 237. Having reached that conclusion upon the controlling point in the case, it is unnecessary to consider whether the plaintiff was herself guilty of negligence, or the other assignments of error.

The judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*