92  135<br>92  174

JOHN TALTY, Administrator, etc., v. THE CITY OF ATLANTIC, Appellant.

A sandpit lies on or near the north side of a street upon which there was no sidewalk. The travel upon it was on a wagon track running along near the south line of the street and at some distance from the pit. This track was used by foot passengers. The pit was little used, and quite shallow, and sand was taken from it along an incline from street to pit. Some children went along the incline, dug into the banks of the pit and so undermined it as to cause its fall and their death. There was a verdict for one hundred dollars which was set aside because of its smallness. *Held,* error because the city was not bound to erect such a fence or barrier as would prevent children of tender years from going into such a pit. The city was not bound in the exercise of reason and judgment to anticipate what happened here.

Practice in Supreme Court. Where a verdict is set aside for being too small, the person against whom the verdict ran may appeal from such order and urge that he is not liable in any sum. DEEMER, J., took no part.

*Appeal from Cass District Court.*—HON. N. W.
MACY, Judge.

MONDAY, OCTOBER 15, 1894.

THIS is an action to recover damages for the death
of William D. Talty, the minor son of the plaintiff.
The death of the deceased was caused by the caving of
a bank of sand at or near the north line of Fourth
street, in the city of Atlantic. It is claimed that the
city was negligent in not guarding the approach to the
excavation so as to protect children from the temptation
offered by the sandpit to expose themselves to danger
by digging therein, and that by reason of such negli-
gence the deceased went from the street to the sandpit,
and, while engaged in digging in the sand, the bank,
without negligence on his part, caved, and fell upon
him and caused his death. There was a trial by jury,
which resulted in a verdict for the plaintiff for one
hundred dollars. The plaintiff filed a motion for a new
trial, which motion was sustained, and the defendant
appeals.—*Reversed.*

*Rockafellow & Scott* and *John W. Scott* for appellant.

*DeLano & Meredith* and *Willard & Willard* for
appellee.

ROTHROCK, J.—I. It appears from the evidence
in the case that on the twenty-seventh day of Novem-
ber, 1890, William D. Talty and his brother, and F. J.
Hawley, and Robt. Jensen, who were all small boys
from seven to nine or ten years of age, went to a
sandpit in the outskirts of the city of Atlantic, with
shovels and a small cart, and dug sand in a bank in
the pit, and carted some of it to the home of the Talty
boys, near by, and put it in a chicken coop. They
were at this play in the forenoon, and returned and

resumed the digging in the afternoon. While engaged in shoveling the sand, the bank in which they were digging caved and fell down upon the boys, and caused the death of all of them but Robert Jensen. The sandpit was located on land owned by one Bobezin, on the north side of Fourth street in said city. Bobezin owned some four or five acres of land north of the street, and there was a fence along the north line of the street. Sometime before the disaster occurred, Bobezin moved his fence in on his own land for a short distance, so that sand could be removed from his land without interference with his inclosure. This made a curve in the fence something like a semicircle. In order that sand could be conveniently loaded and hauled into the street, there was an incline or roadway from the street down into the pit, and teamsters backed their wagons down this incline, and loaded them in that position. The pit was not extensively used. There were wagonloads taken from it occasionally, only. It was of small dimensions, and in no place more than five or six feet deep. There is some conflict in the evidence on this question. Some witnesses fixed the depth at from three to four feet and others at five or six feet. There is also a difference in the testimony of the witnesses in reference to the condition of the banks. The witnesses having the better opportunity of knowing the fact, stated that the banks were not perpendicular, but sloped toward the center, something like the shape of a dish or a bowl. Other witnesses testified that the south bank next the street was perpendicular, and one stated that a few days before the accident there was "one place where maybe a half a load of sand had been scooped out under like." The street on or near the line from which the sand was taken was not a public thoroughfare. There were no sidewalks, and the travel along the street was upon a wagon track near the south side, some

distance from the sandpit.   There were no paths made
by persons traveling on foot, and persons walking
along the street kept in the wagon track.   The children
above named went in and out of the sandpit by the
incline or roadway used for backing in the wagons to
be loaded.   There was no duty devolving on the city
to erect a barrier to protect travelers on the street from
injury by falling into the pit.   It is, or at least it ought
to be, conceded that it was not dangerous to the trav-
eling public.   And the evidence shows beyond cavil or
dispute that the accident occurred by reason of the
children digging into and undermining the bank on
the south side of the pit, and near the line of the street.
The only living witness of the casualty was the boy
Jensen.   He was examined on the trial in behalf of the
plaintiff, and the following is his testimony in reference
to the extent of the digging of sand by the four boys:

"In the forenoon the Talty boys and I went over
to the sandbank.   Were there most of the forenoon, and
were digging in the sand, and shoveling out.   We
were digging back into the bank, trying to dig a place
up into the bank for little houses.   We went home to
dinner, and after dinner went back again, and the
Hawley boy with us.   Commenced digging again in
the sand where we had been digging the little houses
in the forenoon.   We dug south into the bank.   We
dug a hole in the bank in three places, and the Hawley
boy was digging a place for himself.   Willie Talty was
digging a place for him, and the little Talty boy and I was
digging a place for us.   In the forenoon the little Talty
boys asked me to go over to the sandbank with them,
to get sand.   That Mrs. Talty (their mother) said they
could go and bring down some sand to the house, and
we went over there, and brought a little load of sand
back home at noon, and put the sand in Mrs. Talty's
chicken coop.   When we got back to Mr. Talty's with
the sand, and going to the chicken house, Mrs. Talty

was there on the porch, back of house, toward the chicken coop. We brought the shovels home with us at noon. That afternoon they wanted me to go back with them. That was after the Hawley boy came. over there." There is a conflict in the evidence as to the exact location of the south side of the sandpit with reference to the north line of the street. As we read it, there is a very clear preponderance showing that up until the digging was done by the children the excavation was wholly north of the street. But we regard that question as of but little consequence in determining this appeal. There is no real controversy as to the proper location of the north line of the street. We have stated the facts quite fully, because we base our conclusion as to the rights of the parties in this appeal upon the evidence in the case.

II. As has been stated, the verdict of the jury was for one hundred dollars. One ground of motion for new trial, stated in different forms, was that the verdict of the jury was the result of passion and prejudice, and contrary to the evidence bearing upon the question of the amount of damages sustained by the estate of the deceased. The judgment entry sustaining the motion for a new trial is as follows: "March 29, 1892. Now on this date the motion to set aside the verdict of the jury, and for a new trial herein, and in arrest of judgment, coming on for final determination, and the court being fully advised in the premises, it is ordered by the court that the motion be, and the same is hereby, sustained, and the verdict of the jury set aside, and a new trial granted, upon the ground of insufficiency of the amount of the verdict, if there is any liability against the defendant at all, and overruled on all other grounds, and the defendant at the time excepts to the judgment and ruling of the court." After a careful consideration of all the evidence in the case, our judgment is that the

motion should have been overruled on the ground that the evidence did not authorize a verdict in any amount. It is claimed in behalf of appellee that the defendant is in no position to urge that a judgment for one hundred dollars should be rendered against the city, and at the same time insist that the evidence was insufficient to authorize a verdict in any amount; and that the defendant should be required to submit to the order for a new trial, and if, upon such a new trial, there should be a verdict for the plaintiff, the question as to the sufficiency of the evidence can then be presented. We think that no such circumlocution is required. This is not what is known as a verdict for a merely nominal sum, and yet it is so insignificant in amount as to indicate that, in the minds of the jury, the evidence did not warrant substantial damages. Indeed, it may be said to be a fair inference that the verdict was the result of sympathy for the friends of the deceased, rather than a finding of a legal right to recover upon the evidence. The defendant no doubt can well afford to pay the amount of this verdict and the costs of the action, rather than incur the expense of another trial, even if there should be a verdict against the plaintiff.

III. There can be no question that if this action had been brought to recover for the death of an adult person there would be no right of recovery. No recovery could be had in such case, because the casualty would have been the result of the inexcusable negligence of the deceased. And no action would lie for an injury to a traveler upon the street, who should in the daytime, for some reason, leave the traveled track, and fall into the excavation. Counsel for appellee cite cases in which it is held that if an obstruction or excavation be permitted which renders a street dangerous to persons or vehicles, whether the excavation be in the street or so near it as to be dangerous to persons

traveling on the street, the city or town may be liable. It is sufficient to say that the facts in this case present no such question. Surely the city was under no obligation to erect a fence across the incline to the sandpit to protect travelers. And there is no suggestion that there should have been a barrier along the line of the street opposite to the bank of the pit. The obligation to do this is not suggested by anything in this record. Such a claim would be entirely without merit, because it conclusively appears that the children went in and out by the incline or roadway. These general observations are in line with the decisions of this court as well as those of courts of last resort elsewhere.

IV. The case involves the liability of the city to another class of persons than travelers upon its streets.

The question is, was the city negligent in not erecting such a fence or barrier as would have prevented children of tender years and immature judgment from exposing themselves to danger, not by merely entering upon the adjoining land and falling into an excavation or pit, but from injury to the children while at their play, brought upon themselves by undermining the bank. The doctrine of contributory negligence of an adult does not apply to young children. The court very properly instructed the jury in this case that the deceased was required to exercise that degree of care which may reasonably be expected from one under the same conditions, of the same age, and surrounded by the same circumstances. The rule applicable to the city in determining whether its officers were negligent is, was the situation of the sandpit in such close proximity to the street, the condition of the pit as to its extent and all the surroundings, such as to require the authorities of the city, in the exercise of reasonable judgment, to anticipate that children might be allured to the pit from the street, and with shovels and spades excavate holes in the bank to such an extent as to

endanger their lives. If there is warrant in the evidence to authorize such a finding, the city is liable. Was the question of negligence involved in such doubt that fairminded men might, upon an impartial and honest consideration of all the facts and circumstances, find that the city was negligent? If such a finding should be sustained, it appears to us that nothing short of fencing streets would excuse cities and towns from actions like this. At every place where there is a cut or embankment in a street, barriers would be required to prevent boys from being allowed to use the sloping banks in winter as coasting ground, to their injury. We think the accident was one of a class so rare, unexpected, and unforeseen that defendant can not be charged with negligence for failure to guard against it.

Three separate actions were brought to recover for the death of the three boys. In the case for the death of the boy Hawley, decided at the present term, there was a verdict and judgment for the plaintiff for five hundred dollars. In the other case there was a verdict and judgment for the city. It thus appears that three juries have passed upon the question of liability, in one of which the jury determined that there was no cause of action, and in the other two the verdicts are for such meager amounts as to lead to the belief that they were a compromise among the jurymen, or that they believed there was no real ground for a verdict for substantial damages. It is useless to review authorities in a case like this, for the reason that no two cases can be found based upon like facts. As supporting the views herein expressed, see *Murphy v. City of Brooklyn*, 98 N. Y. 642; *Keyes v. Village of Marcellus*, 50 Mich. 438, 15 N. W. Rep. 542; *Gavin v. City of Chicago*, 97 Ill. 66; *Goeltz v. Town of Ashland*, 44 N. W. Rep. (Wis.) 770; *Ratte v. Dawson*, 52 N. W. Rep. (Minn.) 965; *Clarke v. City of Richmond*, 5 S. E. Rep. (Va.) 369; *Frost v. Railroad*, 64 N. H. 220, 7 Atl. Rep. 790. In *Railroad v.*

*Stout*, 15 Wall. 657, which was an action to recover damages to an infant of tender years for an injury received while engaged with other boys playing with a turntable, which was left unlocked, and revolved easily on its axis, it was held that the question of negligence of the railroad company was properly submitted to the jury.   There are other cases which follow that doctrine. It appears that in *Stout's* case, boys had been previously seen playing with the turntable, and that at one time this occurred when the railroad employees were working on the track, in sight, and not far distant.   This case is in many other respects unlike the case at bar. The fact that the turntable had been used in play by the boys was a strong circumstance tending to show that its use was with the assent of the employees of the railroad company.   In the case at bar the wife of the owner of the land on which the sandpit was located testified that in the forenoon of the day of the fatal accident she told the boys to "get out of there; that they were not allowed to be there; and shortly after that they went away;" and that she did not know of their return in the afternoon until she heard the outcry from the boy who escaped.   Our conclusion is that the motion for a new trial should have been overruled, and judgment entered on the verdict.   REVERSED.

DEEMER, J., took no part in the decision of this case.