M. A. COGLEY, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

CARRIERS: Carriage of Live Stock—Evidence of Damage—Inconsistent Claims as to Damages. In an action against a railroad for damages to horses from watering them prematurely, *held* that the evidence of the shipper as to the extent of damages was of such an exaggerated, inconsistent, and unsatisfying nature that the jury was justified in disregarding it.

CARRIERS: Carriage of Live Stock—Evidence of Damage—Verdict for One Dollar Equivalent to a Finding of no Damage. In an action by a shipper against a railroad for damage to a shipment of horses by watering them prematurely after unloading, *held* that a verdict for one dollar was the equivalent of a finding by the jury that no substantial damage had been proved, and that it was substantiated by the evidence.

SALINGER, J., dissents.

CARRIERS: Carriage of Live Stock—Evidence of Damage—Withdrawal—Guess and Conjecture. An item of damage to a shipment of horses was properly withdrawn by the court, when the only evidence in support of it was a mere guess.

*Appeal from Pottawattamie District Court.*—O. D. WHEEL-
ER, Judge.

APRIL 12, 1919.

SUIT for damages caused to a shipment of horses. The
shipment consisted of 208 horses, contained in nine cars.
The shipment was billed from Billings, Montana, to Omaha,
with stopover privileges at Alliance and Grand Island, Ne-
braska. Plaintiff's original allegation of damages was that
about one half of the horses were made sick at the stock-
yards of the defendant at Alliance, Nebraska, because of
the drinking of impure water furnished by the defendant.
By amendment at the trial, this allegation was withdrawn,
and a substituted allegation made that the sickness was
caused by the watering of the horses prematurely, and be-
fore they were in proper condition to be watered. The jury
rendered a verdict for the plaintiff of one dollar. The plain-
tiff moved to set aside the verdict, as being against the evi-
dence and against the instructions of the court, in that the
plaintiff, if entitled to a verdict at all, was entitled to sub-
stantial damages. The motion was overruled, and judgment
entered on the verdict. The plaintiff appeals.—*Affirmed.*

*Fremont Benjamin* and *Verne Benjamin,* for appellant.

*George S. Wright, Tinley, Mitchell, Pryor & Ross, Byron
Clark, Jesse L. Roop,* and *J. W. Weingarten,* for appellee.

EVANS, J.—I. The real point in this case is whether the
record is such that the jury could, under the instructions of
the court, find a verdict for the plaintiff, and yet find that
no substantial damages were proved. The
record is rather an unusual one in some of
its features. The horses involved in the ship-
ment were bought by the plaintiff at Bill-
ings, Montana. They had been previously

1. CARRIERS: car-
riage of live
stock: evidence
of damage: in-
consistent claims
as to damages.

bought and assembled there by other horse buyers, primarily for the purpose of sale to the French government for war purposes. Previous to their shipment, they had already passed through inspection at Billings, and had been rejected. The purpose of their shipment was to present them for inspection at other inspecting stations, on the theory that a horse rejected by one inspector might be accepted by the next one. They were known as "rejects." The shipment was first unloaded at Alliance, Nebraska, after 34 hours en route from Billings. Shortly after the horses were unloaded and fed and watered at Alliance, some of them became sick with colic. The original allegation of the petition, as already indicated, was that the cause of this sickness was that the drinking water furnished for the horses by the defendant was impure, and impregnated with alkali. This allegation stood until all the evidence in the case was taken. The evidence was practically conclusive that the water in question was not impure, and that it was not impregnated with alkali. Thereupon, after the close of the evidence, the plaintiff withdrew this allegation, and alleged that the cause of the sickness of the horses was that they had been improperly watered by the defendant's agents too soon after their unloading, and before they had been fed. Following this amendment, no further evidence was introduced. The allegation of the amendment was allowed to rest for its support upon the testimony of a witness for the defendant that such premature watering of horses that had been confined for 34 hours on board train would cause colic. The plaintiff and an employee had accompanied his shipment as caretakers. There was a conflict in the evidence as to whether the premature watering of the horses had been done by the defendant's agents or by the plaintiff and his employee. This issue was submitted to the jury. No exceptions were taken to any of the instructions. The verdict of the jury was the equivalent of a finding that no substantial damages were

proven. The verdict ought, therefore, to have been for defendant; but the defendant does not complain. The contention of plaintiff as appellant is that the evidence of damage was uncontradicted, and that the jury, therefore, was bound to follow it. The plaintiff himself was the only witness who testified in his behalf. He testified to an estimate of his damages amounting to over $7,000. In arriving at this estimate, the plaintiff answered the following hypothetical question:

"Q. I will ask you what would have been the fair and reasonable market value at Grand Island, Nebraska, of the nine carloads of horses and mules which you shipped from Billings, Montana, on or about the 12th day of August, 1916, had they arrived at Grand Island, Nebraska, in the *usual and ordinary course of shipment* of such horses, between such points."

The meaning and significance of the foregoing hypothetical question can be understood only in the light of the record as it stood when the testimony was given. At that time, amendments to the petition were on file wherein it was alleged that, in the forwarding of the shipment from Alliance, there had been rough handling of the train between Alliance and Grand Island, and that such rough handling had resulted in the killing of a horse and in the throwing down of several others, to their injury. Plaintiff himself testified in support of these allegations. Plaintiff then testified to the actual value of the horses at Grand Island, Nebraska, as $60 each. In answer to the above hypothetical question, he testified that the horses would have been worth at Grand Island $110 each, "had they arrived at Grand Island in the *usual and ordinary course of shipment* of such horses between such points." Clearly, damages resulting from the rough handling were included in his estimate. Plaintiff's last amendment, filed after the close of the evidence, eliminated all claim for damages for rough

handling, and limited the damages claimed to those result-
ing from the premature watering of the horses. Strictly
speaking, therefore, there was no evidence in the record of
the extent of damages based upon the allegations of the last
amendment to the petition. Furthermore, in the light of
the whole record, the estimate of the plaintiff as to the ex-
tent of his damages was so clearly exaggerated that the jury
was justified, for that reason alone, in placing no credence
therein. The jury might well believe that it furnished no
aid whatever in ascertaining the approximate truth. The
plaintiff had alleged, in his petition and in each successive
amendment, that the actual value of his horses after their
sickness was $80 each. Yet, in his testimony, he fixes such
actual value at $60 each. He had alleged, in his petition
and its successive amendments, that the sum total of his dam-
ages was $3,600, and he prayed judgment for even less;
yet his testimony estimated his damages at over $7,000. He
had repeatedly averred in his pleadings that approximately
one half of his horses had been rendered sick, and damaged
thereby. Yet he testified that all of them had been thus sick
and had been damaged. As to 76 of them, he estimated dam-
ages to the extent of $10 per head, and as to 130, he estimated
his damages at $50 per head. In the light of the whole rec-
ord, therefore, it is clear that the evidence of the plaintiff
as to the extent of his damages was not worthy of great con-
sideration, and that the jury was, therefore, justified in dis-
regarding it.

II. In overruling the plaintiff's motion to set aside the
verdict, the trial judge put the ruling, in effect, upon the
ground that he deemed the plaintiff's case

**2. Carriers: car-
riage of live
stock: evidence
of damage:
verdict for one
dollar equiv-
alent to a find-
ing of no dam-
age.** without merit, and that the great weight of
the evidence was against him. We think the
record fairly sustains the trial court in the
view thus expressed. It was, therefore, a
sufficient reason for the ruling. *Hubbard v.
Town of Mason City*, 64 Iowa 245.

III.   One item of damages claimed by the plaintiff pertains to a horse with an injured knee.   This item was withdrawn by the court, as not having sufficient support in the evidence.   Without discussing the details of the evidence, we think the holding was proper.   The evidence relied on by the plaintiff in support of such item was a mere guess. Complaint is also made of the withdrawal of an item of damage for the death of a horse in the car.   This item was withdrawn from the jury by Instruction 26, and the reasons for such withdrawal were stated therein.   No exception was taken to the instructions. We find no error in the record.   The judgment below must, therefore, be—*Affirmed.*

3. Carriers: carriage of live stock: evidence of damage: withdrawal: guess and conjecture.

Ladd, C. J., Gaynor, Preston, and Stevens, JJ., concur.

Salinger, J. (dissenting).   The verdict fixes the damages of plaintiff at one dollar.   I think the motion of plaintiff to set aside the verdict ought to have been sustained. Had defendant, instead of plaintiff, made such motion, that, too, would have been well made.   Setting the verdict aside on the motion of the court would have been proper.   That such concurrent right to destroy this verdict exists, is due to the fact that the verdict is an outlaw; is not the creature of judicial consideration.   If the jury believed the plaintiff, no theory of the evidence sustains that his loss is paid for by a dollar.   If the plaintiff was not believed, there is no warrant for finding that defendant owed plaintiff just a dollar, and for compelling defendant to pay the costs of suit.   To me, this proves that the verdict is captious, is regardless of the evidence, and neither party has had a fair trial.   It may be that the majority is proceeding under the sanction of a rule prevailing in some of the states, that,

in a case like this, the allowance of purely nominal damages is, in effect, a verdict for the defendant. I have to say that, in *Ruby v. Lawson*, 182 Iowa 1156, this court declined to adopt such a rule. In the *Ruby* case, the plaintiff sued for $10,000 damages, alleged to have been sustained by defendant's alienation and debauchment of plaintiff's wife. There was a verdict for $100. That, in that case, was as much a mere nominal verdict as is the one dollar allowed in this case. I dissented in the *Ruby* case on the ground that the verdict should not be reviewed here as a real verdict is, because the size of the verdict demonstrated that the jury had found for defendant, rather than plaintiff, and that the verdict had no support in the evidence, and was a mere device to throw costs upon the only party from whom costs could be made. The court rejected this view, and dealt with the $100 verdict as a finding for plaintiff. I am bound by this decision, though I dissented from it. Those who made the decision should either overrule it or follow it. Instead of doing that, they are recruiting the army of "snags" which trouble all investigations made by the profession.