ETHEL RUBINSON, Appellee, v. DES MOINES CITY RAILWAY COM-
PANY et al., Appellants.

**NEW TRIAL:** Inadequate Recovery—Nominal Verdict. If the evi-
dence in an action for personal injury would justify the jury in
denying plaintiff *any* damages, a verdict for plaintiff for $1.00 will
not entitle plaintiff to a new trial on the theory that such verdict
was a finding that plaintiff was entitled to recover, and that $1.00
was wholly inadequate. In such a case, a verdict for $1.00 will be
treated as a verdict *for defendant.*

*Appeal from Polk District Court.*—GEORGE A. WILSON, Judge.

MAY 13, 1921.

ACTION to recover damages for personal injury claimed to
have been received by plaintiff while attempting to board a
street car. The jury returned a verdict in favor of plaintiff
for $1.00. On motion of plaintiff, the court set aside the verdict
and granted a new trial, on the ground that the damages were
inadequate. From the order sustaining plaintiff's motion for
a new trial, defendants appeal.—*Reversed.*

*W. H. McHenry* and *Corwin R. Bennett,* for appellants.

*Lappen & Carlson,* for appellee.

ARTHUR, J.—The scene of the claimed accident was at East
Twenty-fourth and Murry Streets in the city of Des Moines.
There is a sharp conflict in the testimony as to what occurred
at this place. It is undisputed that the car was going east to
the end of the line, two blocks further east, where it turns
around and comes back west toward the downtown district of
the city; that plaintiff signaled the car to stop, so that she and
two ladies with her, Mrs. S. Kramer and Mrs. J. C. Hurwitz,
could board the car; that the car stopped and the door was opened.
Here dispute in the evidence occurs. Plaintiff's version is that
she started to go onto the car, and took hold of a bar which was
on the outside of the car, and put her left foot on the step; and

that, before she had time to bring her right foot ónto the step, the conductor rang the bell and the car started; and that he closed the door, and her left foot was caught in the step, so that the door could not be closed because her foot and leg were caught in it; and that the conductor jerked the door open and she fell off the car; that she had hold of the bar with one hand, and in the other hand she held a basket; that her right leg was hanging; that the conductor was trying to close the door; and that, when the gates were released, she fell to the ground on her back.

Appellee and the two women who were with her testified that plaintiff stepped on the step of the car; and that then the conductor gave the signal and the car started, with appellee standing with her left foot on the step and her right foot hanging, and her left hand holding to a perpendicular rod; and that in this situation appellee rode about six feet, and fell off.

The conductor and motorman and other witnesses testified that plaintiff and her companions signaled the car to stop; that the car was stopped; and that the conductor opened the door and asked plaintiff and her companions if they were going to town, and one of them answered that they were. The car being then bound away from town, the conductor gave the motorman the signal to start the car, having in mind to pick them up after the car had gone out to Twenty-sixth Street and had turned around, and would be going back toward town. The conductor and other witnesses testified that appellee had not attempted to enter the car, had not stepped upon the step of the car, at the time the signal to start the car was given; but that, after the conductor signaled to the motorman to start on east, the plaintiff stepped onto the step of the car and rode a few feet and stepped off, and did not fall; and that, after the car had gone out to the end of the line, two blocks, and had turned around and come back, appellee and her companions got on and rode down town and transferred to another car; that, while she was riding down town, she told the conductor that he had nearly killed her.

Plaintiff claims that she was injured by being thrown off the car step and falling on a basket which she was carrying, which contained some fruit jars. Plaintiff claims that, before

the accident, she was a well woman, and not ailing in any way, and had never had any pains before; and that all the sickness she ever had was the flu, in the fall of 1918, and sickness incident to the birth of her children; that she never had any heart trouble before; that because of the accident her foot was swollen, and the swelling went to her knee; that the swelling in her leg lasted about three days; that after the fall she suffered from pain everywhere, through her back, stomach, and gall; that the pains were very sharp; that the pains seemed to come to her heart from her stomach; that the pains were so severe that she could not be up at times, and had to go to bed; that she had not been able to do any part of her housework since the accident.

Mrs. Kramer and Mrs. Hurwitz were witnesses for the plaintiff, and substantially corroborated appellee's story of the way the accident occurred.

Dr. Wells, doctor for the company, went to plaintiff's home and examined her, soon after her arrival. He asked plaintiff what had happened,—if she had fallen. Mrs. Kramer answered that Mrs. Rubinson had not fallen, but that she had just swung around, and, she thought, had struck the side of the car. Dr. Wells testified that he found a chronic disease of the heart; that the heart was much enlarged, and had murmurs in the valves; that the enlargement was of such a degree that it could not have been of recent origin.

Although plaintiff had testified that she had never been sick except with the flu, in November, 1918, and at the birth of her children, and her husband testified that she had never been sick except with the flu, in the fall of 1918, and at the birth of her children, in the first part of his testimony, he afterwards, as the trial progressed, on cross-examination, remembered a fight between his wife and a man named Hahmen, in 1910, when Hahmen had struck her on the chest and injured her, from which injury she was laid up for some time.

It developed that Dr. Whelpton, who attended Mrs. Rubinson at the time of the Hahmen trouble in 1910, had testified before the grand jury at that time that Mrs. Rubinson had dilation of the heart, exudation into the peritoneum, passed blood from the bowels, and had bruises in a number of parts of her body.

Defendants produced numerous witnesses who had known appellee for many years, who testified that she had been in poor health during the last 13 years.

Appellee called four physicians to testify as experts as to her condition and the producing causes, and appellant called three physicians for the same purpose. Taking appellee's version of the accident as true, the physicians testified as follows:

Dr. Whelpton, the physician who testified before the grand jury in 1910 as to appellee's injuries then, testified that her present troubles of the heart, liver, gall bladder, and kidneys could have resulted from the accident in controversy in this case.

· Dr. Baker, who attended appellee when Dr. Whelpton was away, testified that such an accident would not produce her injuries, but might aggravate a diseased condition already present. His opinion was that appellee had a diseased condition of the heart of long standing, and that the accident might have broken the compensation, and the diseased heart might have produced the other ailments.

Dr. Schooler testified that the disease of appellee's heart was hypertrophy and dilation, and not a result of the accident; that it was a chronic condition of years' development.

Dr. Brown testified that, if plaintiff had no defect in her heart prior to the accident, such an accident could not produce the injury to it; but that, if there was some defect prior to that, the accident might have aggravated it.

Dr. Wells, called by appellant, testified that such an accident could not produce such an injury as appellee had; that there was nothing in appellee's condition that could logically be connected with the accident.

Dr. Leir testified that such an accident could not produce appellee's condition, and could not break the compensation; that it might aggravate the condition, but that would be only temporary.

Dr. Conkling testified that, in his opinion, the accident could not produce or aggravate the condition of appellee, but was more coincident with the breaking down of compensation by natural development than it was productive of it.

None of the physicians except Dr. Whelpton, her family physician, attributed her present troubles which they found, of

the heart, liver, gall bladder, and kidneys, to the accident. Some of them said that the accident, assuming that there was an accident such as plaintiff described, might have aggravated troubles already existing. Before the case was submitted to the jury, plaintiff dismissed all claims for damages except her claim for physical and mental pain and suffering.

The error relied upon for reversal is the sustaining of appellee's motion for a new trial on the ground that the damages allowed by the jury were inadequate.

We have frequently said, in substance, that an order of the trial court granting a new trial should not be interfered with, in the absence of a showing that the court abused its discretion. Some of the cases are: *Ward v. Marshalltown L. P. & R. Co.,* 132 Iowa 578; *Mackintosh v. Locke,* 112 Iowa 252; *Woodbury Co. v. Dougherty & Bryant Co.,* 161 Iowa 571; *Royer v. King's Crown Plaster Co.,* 147 Iowa 277; *Harmon v. Loomis,* 166 Iowa 119; *Thomas v. Illinois Cent. R. Co.,* 169 Iowa 337.

We have held that it was not an abuse of discretion where the trial court granted a new trial on the ground that the verdict was inadequate, where the trial court found that the jury failed to allow the amount of damages shown by the uncontradicted testimony. *Tathwell v. City of Cedar Rapids,* 122 Iowa 50.

In *White v. Chicago & N. W. R. Co.,* 145 Iowa 389, the suit was to recover damages for the destruction of a building by fire alleged to have been occasioned by the defendant's negligence. The jury returned a verdict for plaintiff for $1.00. The verdict was set aside by the trial court, and such order upheld by this court, because the jury was instructed that, if it found for the plaintiff, the measure of recovery was "the fair, reasonable market value of the property at the time it was destroyed," and a nominal verdict was manifestly wrong.

In *Clark v. Iowa Cent. R. Co.,* 162 Iowa 630, the trial court set the verdict aside on the ground that the damages allowed were inadequate, because the court was of the opinion that it affirmatively appeared from the evidence that the damages should be much larger; and the order granting a new trial was upheld by this court.

We have also held that a motion for a new trial should not be sustained on the ground that the damages allowed by the jury

are inadequate, in actions for personal injury, unless the damages are so clearly inadequate and contrary to the evidence as to indicate passion, prejudice, partiality, or corruption. *Hall v. Chicago, B. & Q. R. Co.,* 145 Iowa 291; *Palmer v. Cedar Rapids & M. C. R. Co.,* 124 Iowa 424.

There are numerous cases holding that, where the verdict for a plaintiff is equivalent to a finding that plaintiff was not entitled to recover, and such finding is supported by the evidence, a new trial should not be granted on the ground of inadequacy of the damages. We think the instant case falls within this class. Some of these cases are: *Hubbard v. Town of Mason City,* 64 Iowa 245; *Talty v. City of Atlantic,* 92 Iowa 135; *Cogley v. Chicago, B. & Q. R. Co.,* 185 Iowa 1080.

*Hubbard v. Town of Mason City,* supra, was an action for damages, based on personal injury, against the town of Mason City, and a verdict was returned for the plaintiff for $1.00. The objection of the plaintiff to this verdict was that the damages were inadequate compensation for injury. In holding that the plaintiff was not entitled to a new trial, we said:

"The case is entirely different from an action for a liquidated sum of money, where a party is entitled either to a verdict for a definite amount, or not entitled to anything. It is very evident that the jury in this case did not believe that plaintiff was entitled to damages. If they did so believe, they would have given more than a nominal sum. The verdict is really equivalent to a finding that he was not entitled to recover, and such finding is supported by the evidence; because we think the evidence shows that he was not entitled to recover."

In *Talty v. City of Atlantic,* supra, the trial court set aside the verdict, on plaintiff's motion, on the ground of insufficiency of the amount of the verdict, and, in reviewing the case on appeal, we said:

"After a careful consideration of all the evidence in the case, our judgment is that the motion should have been overruled, on the ground that the evidence did not authorize a verdict in any amount."

In *Cogley v. Chicago, B. & Q. R. Co.,* supra, a recent case, we said:

"In overruling the plaintiff's motion to set aside the verdict,

the trial judge put the ruling, in effect, upon the ground that he deemed the plaintiff's case without merit, and that the great weight of the evidence was against him. We think the record fairly sustains the trial court in the view thus expressed. It was, therefore, a sufficient reason for the ruling.''

In the instant case, there was ample evidence to support a finding for the defendant; and, if the jury had found for the defendant, it could not be successfully contended that the verdict was not supported by the evidence. It was a question for the jury to determine what, if any, accident occurred. The jury might well have found, in accordance with the version of defendant's witnesses, that appellee did not fall on her back on the basket containing jars, but that she stepped off the step of the car, after riding three or four feet, and alighted on her feet, and did not fall at all. The jury might have found that appellee received no injury whatever from the claimed accident, and such finding would have had ample support in the evidence.

Applying to the instant case the rule announced in the *Hubbard* case, since followed, we think there can be no question but that appellee's motion for a new trial should have been overruled. It seems to us that, if the jury in the instant case believed that appellee was entitled to damages for physical and mental pain, they would have awarded her more than a nominal sum; and that, the verdict being really equivalent to a finding that plaintiff was not entitled to damages, and such finding being supported by the evidence, a new trial should not have been granted.

The order of the trial court setting aside the verdict and granting a new trial is reversed, and the case is remanded for judgment on the verdict.—*Reversed.*

Evans, C. J., Stevens and Faville, JJ., concur.