HELEN MAXINE BIRD, by her next friend, GEORGIANNA PEARL BIRD, Appellee, v. CITY OF KEOKUK, Appellant.

No. 44715.

MARCH 7, 1939.

REHEARING DENIED JUNE 23, 1939.

E. W. McManus and John E. Newkirk, for appellant.

Hollingsworth & Hollingsworth, for appellee.

MITCHELL, C. J.—On July 14, 1937, Maxine Bird then six years of age was crossing a bridge in the city of Keokuk which spans a ravine known as "Bloody Run". The bridge was about 400 feet long and approximately 60 to 70 feet high. It was constructed in 1931 by the Iowa State Highway Commission as a part of the primary road system. It was built of concrete and steel and designed by engineers of experience and ability. On either side of the bridge is a sidewalk for use of the public. It is five feet in width between the railing on the outside and the steel girder on the inside. This girder which is used as a guard is of solid steel construction thirty-four inches high and capped with a steel plate, 14 inches in width. The roadway used for vehicle travel is 33 feet wide and on either side is a curb 8 inches in height and 8 inches in width. There is an opening

between the concrete curb and the steel girder which measures 10 inches in width.

Exhibit B, one of the photographs of the bridge introduced at the trial, is set forth so that a better idea of the bridge may be had.

There were three or four of Maxine's girl friends with her that evening, all of them older than she was, being around 15 years of age. They were walking across the bridge using the sidewalk and had reached about the center when a young man of about 20 years of age, accompanied by Maxine's sister, called to them from the sidewalk on the opposite side of the bridge. Two of the girls climbed over the girder and walked across the traveled portion of the bridge to where the couple were. Maxine then started to go across and in some way not explained, slipped down through the opening between the curb that guards the highway and the steel girder and fell 60 feet, injuring herself. Her mother as her next friend brought this action to recover damages against the city of Keokuk. There was a trial. At the close of the evidence, defendant made a motion for a directed verdict, which was overruled. The jury returned a verdict for $3,000. The city has appealed.

There flashes into one's mind as he reads this record two questions. First, how did this girl ever fall through this opening? Second, how did she escape death after falling almost 60 feet? But neither need be answered for she did slip through

the opening and she did fall 60 feet and did recover. Many questions are urged by the appellant why there should be a reversal. We find it necessary to discuss but one. Was the city of Keokuk guilty of negligence? It was incumbent upon appellee not only to prove that the city was negligent in some particular alleged, but that such negligence was the proximate cause of the injuries. The only proof offered was confined entirely to photographs of the bridge and measurements taken by one witness. The undisputed record shows that the bridge was of the latest construction, designed by competent engineers and that there are about thirty-five bridges of the same design that have been built in the past few years in Iowa. There is no claim of any defect in the bridge itself.

Let us look at the rules of law covering duties of a municipality with reference to its streets and highways.

In 43 C. J. 998:

"The liability of a municipal corporation for injuries from defects or obstructions in its streets is for negligence, and for negligence, only; it is not an insurer of the safety of travelers, and is not liable for consequences arising from unusual or extraordinary circumstances which could not have been foreseen, but is required to exercise ordinary or reasonable care to maintain its streets and sidewalks in a reasonably safe condition for travel by those using them in a proper manner."

In Talty v. City of Atlantic, 92 Iowa 135, 141, 60 N. W. 516, 518, this court said:

"The rule applicable to the city in determining whether its officers were negligent is, was the situation of the sandpit in such close proximity * * * and all the surroundings, such as to require the authorities of the city, in the exercise of reasonable judgment, to anticipate that children might be allured to the pit from the street, and with shovels and spades excavate holes in the bank to such an extent as to endanger their lives. If there is warrant in the evidence to authorize such a finding, the city is liable. Was the question of negligence involved in such doubt that fairminded men might, upon an impartial and honest consideration of all the facts and circumstances, find that the city was negligent? If such a finding should be sustained, it appears to us that nothing short of fencing streets would ex-

cuse cities and towns from actions like this. At every place where there is a cut or embankment in a street, barriers would be required to prevent boys from being allowed to use the sloping banks in winter as coasting ground, to their injury. We think the accident was one of a class so rare, unexpected, and unforeseen that defendant can not be charged with negligence for failure to guard against it.''

In 4 R. C. L. page 219, the author says:

''A municipality cannot properly be charged with the duty of safeguarding young children against accidents while crossing bridges, except to afford such protection as is comprehended within its ordinary obligation to keep and maintain its bridges in a reasonably safe condition. It is therefore not bound to erect barriers or to station watchmen for the special purpose of protection to the young. Accordingly a bridge owner is not liable for injury resulting to a child as a consequence of his venturing, in his childish recklessness, where no one, child or adult, should go.''

In Brose v. City of Dubuque, 193 Iowa 763, 773, 187 N. W. 857, 861, this court referring to a Louisiana case said:

''On the contrary, we are of opinion that, under this entire record, the accident was one of a class so rare, unexpected, and unforeseen that defendant cannot be charged with negligence of which plaintiff can complain, for failure to guard against it. Talty v. City of Atlantic, supra. See, also, Biegel v. City of New Orleans, 143 La. 1078 (79 So. 867),a case in which a child of four years old fell from a sidewalk into a ditch near the end of a culvert, was drawn into the culvert by swiftly flowing water, and drowned. It was claimed that the city was negligent in not having placed a grating or protection of some kind at the end of the culvert, to prevent the drowning of a child who might fall into the ditch. The court said: 'We cannot reconcile our minds to the opinion that the municipal authorities are to be blamed or found guilty of actionable negligence for their failure to foresee and guard against such an extraordinary occurrence as this was. We are not assured—in fact, we have much doubt—that a grating at the end of the culvert, such as is suggested in plaintiff's petition, would have saved the child's life. If such a safeguard had been there, and the child had been killed

by being hurled against it, we might now be wondering whether the child could have passed through the unobstructed culvert unhurt. It is not contended that the municipal government was at fault in failing to have railings along the edge of the sidewalks, to prevent children from falling into the gutters or ditches. On the contrary, it must be conceded that the municipality could no more avoid the possibility of a child's falling into an open ditch or gutter than it could make it impossible for a child to fall into the river.. The plaintiff's contention, therefore, resolves itself into this: That the city should have had life-saving contrivances for children who might fall into an open ditch. * * * Our conclusion is that the city is not responsible for this deplorable accident.' ''

■ And our own court in the case of Johnson v. City of Ames, 181 Iowa 65, 71, 162 N. W. 858, 859, said:

'' 'There are very few, if any, streets or highways that are or can be kept so absolutely safe and perfect as to preclude the possibility of accidents, and whether, in any case, the municipality has done its duty must be determined by the situation, and what men knew about it before, and not after, an accident. When the defect is of such a character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; but when, as in this case, the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law. Assuming that the defendant's officers were men of reasonable prudence and judgment, could they, in the reasonable exercise of these qualities, have anticipated this accident, or a similar one, from the existence of this depression in the walk?' They could undoubtedly have repaired it at very little expense, but the omission to do so does not show or tend to show that they were negligent, unless the defect was of such a character that a reasonably prudent man should anticipate some danger to travelers on the walk if not repaired. If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reason-

ably safe, within the rule, and when accidents occur, the municipality must be treated, practically, as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect, from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence.' ''

█ With these rules in mind, let us consider the record before us. The bridge was of the latest construction, there was no defect. The sidewalk was five feet wide. The girder of solid steel construction that guarded the sidewalk from the roadway was 34 inches in height, it was capped with a steel plate 14 inches in width. Had the child in this case remained on the sidewalk, there would have been no accident. But following her playmates of more mature years, she climbed up on the girder. She was but 41 inches high. In other words the guard was within seven inches as tall as she was. The steel plate on the top of the girder extended out seven inches over the traveled portion of the highway. At that point the opening was but three and one-half to four inches wide. She had to slide down through that opening, go through the opening between the curb of the roadway and steel girder, the widest portion of which was ten inches. In view of such astounding circumstances can it be said that the officials of the city of Keokuk failed to exercise ordinary or reasonable care in not anticipating that a small child might fall through this space which constituted an essential part of the engineering design.

The appellee urges that the case is controlled by the decision of the court in Whitlatch v. City of Iowa Falls, 199 Iowa 73, 201 N. W. 83. With this we cannot agree. The facts are entirely different. In the Iowa Falls case the accident occurred on the approach to the bridge, which was only seven feet, five inches wide. There were ruts and depressions in the traveled portion which caused the injury. A defect in the road itself. In the case at bar there was no defect and had the child remained on the sidewalk, there would have been no accident.

She had to climb over a steel girder and slip through a small opening on the other side of the guard before the accident happened.

Appellee cites the case of Wheeler v. City of Fort Dodge, 131 Iowa 566, 108 N. W. 1057, 9 L. R. A. (N. S.) 146. The writer of this opinion is well acquainted with the facts in that case for as a young boy he gathered with thousands of others on the Fourth of July to witness a slide for life from the top of the courthouse across the main street in the city of Fort Dodge. The unfortunate performer was supposed to hang by her teeth but instead a harness was arranged around her shoulders to hold her up. The harness broke and she fell hitting a man by the name of Wheeler. The rules of law laid down by this court in that case do not apply to this case for the facts are entirely different.

Appellee in her brief and argument says: We quote "If there are dangerous places either upon the street or in such close proximity to it that it imperils those using the street, the city must erect necessary barriers or guard rails to protect the user of the street therefrom."

The trouble with the statement is the facts in the case at bar do not bear it out. There is no claim of a dangerous place on the sidewalk of this bridge, not even appellee claims that. Now as to "close proximity", there was a solid steel girder 34 inches high between the sidewalk and the opening through which the child fell. Can that be considered "close proximity" when in order to reach the place claimed to be dangerous, the steel girder had to be climbed over and the child slip through an opening three or three and one-half inches at its top and ten inches at the bottom?

Can it be said that a reasonably prudent man would have anticipated such danger to pedestrians on the sidewalk? Could anyone have thought that even a child would have climbed over this steel girder and been injured?

The engineer of bridge design for the Iowa State Highway Commission testified that the reason for leaving the opening be-. tween the curb of the roadway and the girder is to prevent the trucks and vehicles using the bridge from hitting the knee braces that run out at right angles, to permit free circulation of air and keep rust from forming as it would if the concrete were in

contact with the steel and to permit painting crews to work on that part of the bridge.

This was an unfortunate accident. The injury to a young child appeals so strongly to our sympathies that we naturally think it should have been prevented. But cases cannot be decided by our feelings. Before recovery can be had, there must be proof of negligence on the part of the City of Keokuk. The burden was on the appellee. She has failed to meet that burden. The lower court should have directed a verdict. It necessarily follows that the judgment and decree must be and it is reversed. —Reversed.

All JUSTICES concur.